# Rauch *versus* Commonwealth.

1. The Local Option Act and Supplement,—March 27th 1872, and March 6th 1873,—repealed the right to grant a brewer's license under former laws.

2. The proviso of the special Act of March 27th 1866 (prohibiting the sale of liquors in Blair county, &c., except to licensed innkeepers), that manufacturers might sell by the cask, &c., did not, after the passage of the Local Option Law, save from prosecution a brewer selling in that county under a treasurer's license.

3. In an indictment against a brewer in Blair county,—which had adopted the Local Option Law,—for selling beer without license, he pleaded specially the proviso in the Act of 1866 and his treasurer's license ; the Local Option law being a general law the Commonwealth need not reply the act; nor that Blair county had adopted it.

4. A court will take judicial notice of things which are public in their effects and relations and ought to be known within their jurisdiction.

5. A law required the imposition of a fine upon conviction for the first offence in unlawfully selling liquor, and imprisonment for a second similar offence.   *Held*, that in order to subject the defendant to imprisonment it must be charged in the indictment that he had before been convicted of such offence ; the rule applies to misdemeanors as well as felonies.

6. A defendant was " convicted of unlawfully selling liquor ; and immediately afterwards, before the same judges, was convicted of a second sale ; on an indictment not charging that it was a second offence, the court sentenced

[Rauch *v.* Commonwealth.]

him to imprisonment as for a second offence." *Held*, to be error, and the sentence was reversed.

7. In imposing a sentence, to leave to a judge to determine outside of the record that the offence has been committed, subjects the defendant to an unconstitutional mode of trial; the former conviction is a fact which must be determined by a jury.

May 8th 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Writs of error to the Court of Quarter Sessions of *Blair county*: Of May Term 1875, No. 18, 19 and 86. The three writs were argued together.

On the 28th of July 1874, No. 25 to July Sessions of the court below, an indictment was found against Frederick W. Rauch and Charles Rauch "for selling spirituous, vinous and malt liquors," &c., to Al. Mulligan and others. The defendants pleaded "not guilty," and also a special plea, that as to so much of the indictment as charges the defendants with selling malt liquors without license, the defendants ought not to be prosecuted, &c., because Frederick W. Rauch had long owned, used, &c., a brewery in Hollidaysburg, Blair county, during which time, and at the time of the commission of the alleged offence, he manufactured and sold beer, the said Charles Rauch being his servant; that the beer charged as having been sold, was sold by the cask, of not less than five gallons, and was their own manufacture; that the brewery was duly rated by the mercantile appraiser of Blair county, and the said Frederick W. Rauch paid the sum assessed, and received from the treasurer a license to carry on the business of a brewer for one year from the 1st of May 1874; that an Act of Assembly of the 27th of March 1866, prohibiting the licensing of any person to sell vinous, spirituous, malt or brewed liquors in the counties of Blair, &c., enacted that it should not be lawful to license any one to sell such liquors in the county of Blair, &c., except to keepers of hotels, inns and taverns, with the proviso that the act should not be construed to prevent the manufacturers of such liquors from selling the products of their manufactures by the cask or barrel.

Blair county was one of the counties in which the Act of March 27th 1872, Pamph. L. 49, and March 6th 1873, Pamph. L. 39, known as the "Local Option Law," was in operation.

July 29th 1874, the Commonwealth demurred to the special plea, and defendants joined issue on the demurrer. On the same day the court gave judgment for the Commonwealth on the demurrer, and on the 31st day of July sentenced the defendants jointly to pay a fine of $100.

The defendants took a writ of error, and assigned for error: entering judgment for the Commonwealth on the demurrer.

At the same sessions, No. 26, of July Sessions 1874, another indictment was found (July 28th) against the same defendant for

[Rauch *v.* Commonwealth.]

selling "spirituous, vinous and malt liquors" to West Athey and others.

This indictment was in the same form as the first; it did not charge that it was the commission of a second offence. The defendants pleaded as before, and on the 29th of July, the Commonwealth demurred to the special plea. On the 29th of July the court gave judgment for the Commonwealth on the demurrer, and sentenced defendants as follows:—

31st July 1874. It appearing to the court that this is a second conviction of defendants of a subsequent misdemeanor of selling liquor without license: they are sentenced to pay jointly a fine of one hundred dollars to Commonwealth of Pennsylvania for use of Blair county, and costs of prosecution, and to undergo an imprisonment in the county jail for the term of sixty days.

The defendants took a writ of error; they assigned for error:—

1. Entering judgment for the Commonwealth on the demurrer.

2. Sentencing the defendants to imprisonment.

On the 27th of January 1875 (No. 31, to January Session 1875), an indictment was found against Charles Rauch for selling "spirituous, vinous and malt liquors" to John McFarland and others; the indictment was in the same form as the other two indictments, there being no averment that this was a second offence.

The defendant pleaded "Not guilty." The jury found him guilty, and the court sentenced him as follows:—

30th January 1875. Defendant sentenced to pay a fine of one hundred dollars to Commonwealth of Pennsylvania for use of Blair county, and costs of prosecution, and it appearing to the court that the said conviction is for a second and subsequent offence, the said defendant is further sentenced to imprisonment in the county jail for the term of ninety days.

The Act of March 22d 1867, sect. 4, Pamph. L. 41, 2 Br. Purd. 947, pl. 51, enacts that any person convicted of selling liquors without license shall, for the first offence, be fined not exceeding one hundred dollars, and for the second shall be fined and imprisoned, &c.

The defendant took a writ of error, and assigned for error that the court sentenced him to imprisonment. In each of the foregoing cases the sentences were suspended.

*S. S. Blair* (with whom was *F. P. Tierney*), for plaintiffs in error.—The Act of March 31st 1856, sect. 3, Pamph. L. 200, 1 Br. Purd. 176, pl. 4, authorizes the sale of beer in quantities not less than five gallons. The Act of March 27th 1866, sect. 1, Pamph. L. 332, authorizes brewers in Blair county to sell liquor of their own manufacture by the cask or barrel. To authorize imprisonment it should have been charged in the indictment that the offence charged was a second offence: 3 Whart. Crim. Law,

[Rauch v. Commonwealth.]

sect. 3418; Smith v. Commonwealth, 14 S. & R. 69; Reg. v. Page, 9 C. & P. 756; Plumley v. Commonwealth, 2 Metcalf 408.

*A. S. Landis* (with whom was *J. F. Millikin,* District-Attorney), for Commonwealth, defendant in error.—The Act of 1872 was of a general character, and the vote on license was a public notorious act; the court might, therefore, judicially notice them *ex motû suo :* 1 Greenl. Ev. sect. 4.

Chief Justice AGNEW delivered the opinion of the court, October 12th 1875.

These three cases will be considered together.

The plaintiffs in error rest their case on the right of Frederick W. Rauch to sell beer as a licensed brewer, under the Act of 7th of March 1866, Pamph. L. 332. This defence is common to two of the indictments, and is set out in special pleas. But his right to a brewer's license was not derived from the Act of 1866. The proviso in the first section of the act only saved the right from the prohibition of the act, and thus enabled him to resort to former laws to obtain the license. Hence, the true question is whether the right to a brewer's license, under former laws, was repealed by the Local Option Act of 1872, and its supplement of 1873, Pamph. L. 1872, p. 49; Pamph. L. 1873, p. 39. This has been settled by the decision of this court in the case of the Commonwealth v. Muller, (opinion by Justice Mercur, Legal Intel., March 6th 1874, p. 78.) By the express terms of the third section of the Act of 27th of March 1872, and the seventh section of the Act of 6th of March 1873, licenses for the sale of *malt* as well as of other intoxicating liquors were forbidden in every county in which the law went into operation. Nor is the right to the license saved by the proviso, that the act should not be construed to repeal or affect any *special* law *prohibiting* the sale of intoxicating liquors or forbidding the granting of licenses. The saving is of special *prohibitory* laws, but Rauch claims his license as not prohibited at all. His claim rests not on the Act of 1866, but on the former laws providing for licenses to brewers. These former laws are repealed by the Local Option Law wherever it operates.

It is contended, however, that the Act of 1872 not being pleaded or replied the court ought not to have noticed it. But the court having noticed it, the real question is whether it committed error in so doing? The court having acted under the law, clearly it acted according to law, and it cannot be error when a court acts according to law. But I have no doubt the court was right in taking notice of it. The Act of 1872 is·a general law, applicable to the whole state; the election under it is to be governed by the general election laws ; the result is to be duly certified and returned to the clerk of the Court of Quarter Sessions; the certificate must

[Rauch *v.* Commonwealth.]

be laid before the judges of the Court of Quarter Sessions at the first meeting of the court after the election, and filed of record, and the judges are then to be governed by the result of the vote upon the question of granting licenses, and must, therefore, take judicial cognisance of the right to have a license. Thus, by the very terms of the law, the court is bound to know judicially whether the treasurer could grant a valid brewers' license after the result of the vote had been judicially ascertained. Besides, on general principles, a court will take judicial notice of many things which are public in their effects or relations, as seen in Mr. Greenleaf's Treatise on Evidence, § 4, vol. 1. " In fine (says he), courts will take notice of whatever ought to be generally known within the limits of their jurisdiction." § 6, chap. 2.

The next question is applicable to two of the indictments only, viz., Nos. 26 and 31, January 1874. These indictments set forth no former conviction for selling liquors contrary to law, yet the court, upon its own knowledge of its records, sentenced the defendants to imprisonment in the county jail as upon a conviction of a *second* offence.

This raises a serious question, whether a defendant can be made to suffer the greater punishment due to a second offence, without a trial, or being called on to answer for a second offence ? That in cases of felony he cannot is proved by the case of Smith *v.* Commonwealth, 16 S. & R. 69. There the sentence for a punishment due to a second offence was reversed, on the ground that the fact of judgment for the former offence did not appear in the indictment. It was held that this must be part of the record. But it is contended that this rule does not apply to misdemeanors. It is hard to discover any solid ground of distinction. The right of trial by jury is not confined to felonies, and the fact of identity of person is the same in either case. Clearly, a recently commissioned judge could not tell whether the John Smith or John Jones, before him now, is the same John who was convicted under his predecessor several years ago. So, if the fact of a former conviction does not appear in the record, a court of error would have no means of determining whether the defendant was rightly sentenced as for a second offence, except by sending for the record of the former case and taking proof of the identity of the person defendant.

As a general principle the punishment inflicted upon a citizen for any offence should appear by the record to be the lawful consequence of his conviction of that offence. Now, imprisonment in jail is not a lawful consequence of a mere conviction for an unlawful sale of liquors. It is the lawful consequence of a second sale only after a former conviction. On every principle of personal security and the due administration of justice, the fact which gives rightfulness to the greater punishment should appear in the record.

[Rauch *v.* Commonwealth.]

To leave to a judge to determine it outside of the record is to subject the defendant to an unconstitutional mode of trial. The right to a trial of a material fact, to constitute his offence, by his peers, is one of the fundamental rights of the citizen, excepted out of the power of the legislature to impair or destroy. The opposite argument is that the setting forth of the former conviction would prejudice the defendant in his trial. But clearly the substantive offence, which draws to itself the greater punishment, is the unlawful sale after a former conviction. This, therefore, is the very offence he is called upon to defend against. He cannot complain if, after suffering a former conviction and sentence, he commits a second offence of the same kind. Besides, if he desires no trial upon the question of a former conviction, a court will take care of his interests, and see that he is not unduly prejudiced. The court below therefore erred in passing sentence of imprisonment as for a second offence.

And now, October 12th 1875, the sentence of the Court of Quarter Sessions of Blair county, upon the indictment numbered 25 of January Sessions 1874, is affirmed, and the record ordered to be remitted for execution, in due course of law. The sentences in Nos. 26 and 31, of January Sessions 1874, of the said Court of Quarter Sessions are reversed, and in each case the record is ordered to be remitted to the same court, with direction to pass sentence upon the defendants in each case, as for the offence set forth in each indictment respectively, and thereupon to proceed according to law.