**UNITED STATES ex rel. COLLINS v. CLAUDY, Warden.**

**No. 10857.**

United States Court of Appeals
Third Circuit.

Argued March 6, 1953.

Decided May 7, 1953.

Gilbert J. Helwig, Pittsburgh, Pa., for appellant.

Robert E. Woodside, Atty. Gen., of Pa., James F. Malone, Jr., Dist. Atty. of Allegheny County, Pittsburgh, Pa., for appellee.

Before McLAUGHLIN, STALEY and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

A Pennsylvania statute authorizes an enhanced penalty upon second conviction of certain crimes. The question here is whether the manner in which a Pennsylvania trial court utilized that statute to impose upon the relator, Collins, double the normal maximum penalty for the crime with which he was charged violated the Fourteenth Amendment requirement of procedural due process of law.

The question arises in a habeas corpus proceeding initiated in a United States District Court by Collins to obtain release from state custody. It is his contention that a portion of his sentence greater than the time remaining to be served is invalid and, accordingly, that he is entitled to be released forthwith from custody. By a long and tortuous course of litigation over a seven-year period in state and federal courts,[1] relator has so obviously exhausted any remedy available to him through procedure originating in any state court as to clear the way for the present original petition in a District Court of the United States.

The District Court granted Collins a plenary hearing. The complete trial record of his conviction and sentence, and the records of the subsequent collateral proceedings were put in evidence. In addition, oral testimony was received. From all this the essential facts emerge without substantial dispute.

In 1931 Collins was indicted in Pittsburgh for felonious breaking and entering a store in the daytime and stealing $29.30 from the cash register. Under the Pennsylvania statute upon which the indictment was founded the burglary charged was punishable by imprisonment for a maximum term of ten years. See Section 2 of the Act of April 22, 1863, P.L. 531, as amended by the Act of March 13, 1901, P. L. 49. Collins pleaded guilty and on May 25, 1931 was present in court for sentence. The court sentenced him to imprisonment for a term of from five to twenty years. As recorded, the sentence recited that it was imposed "pursuant to the Act of Assembly approved April 29, 1929". This was a reference to the Pennsylvania Habitual Criminal Act which permitted a Pennsylvania court within its discretion to impose upon an offender for a second conviction of certain crimes, including burglary, within a five year period, a penalty not to exceed twice the maximum penalty normally prescribed for that crime.[2] But neither at

1. Relator's first petition for habeas corpus was filed in the Court of Common Pleas for Allegheny County in 1946. Dismissal followed without hearing; the Superior Court affirmed with opinion, Commonwealth ex rel. Collins v. Ashe, 159 Pa.Super. 553, 49 A.2d 265, and allocatur was refused by the Supreme Court of Pennsylvania. 159 Pa.Super. xxiv. An original petition was then filed in the District Court of the United States for the Western District of Pennsylvania. Various proceedings, including two appeals to this court, followed. U. S. ex rel. Collins v. Ashe, D.C., 74 F.Supp. 987; Id., 3 Cir., 175 F.2d 555; Id., D. C., 80 F.Supp. 914; Id., 3 Cir., 176 F.2d 606. This litigation proved indecisive because during its course the Supreme Court made clear that exhaustion of state remedy prerequisite to habeas corpus in

a federal court included an effort to obtain review of the ultimate state ruling by the Supreme Court. Accordingly, the petition for habeas corpus here was finally dismissed for want of jurisdiction. Id., D.C., 90 F.Supp. 463. Petitioner returned to the state court seeking habeas corpus. He did everything possible procedurally, including an unavailing petition to the Supreme Court for writ of certiorari. Com. ex rel. Collins v. Claudy, 170 Pa.Super. 199, 85 A.2d 663; allocatur refused April 1, 1952, at No. 1827A Misc.Docket; certiorari denied 343 U.S. 954, 72 S.Ct. 1048. On the merits, the grounds of relief now urged in the Federal proceeding were urged unsuccessfully in the state proceedings.

2. The Act of April 29, 1929, P.L. 854 provides in relevant part as follows:

sentencing nor at any earlier time, nor in the indictment itself, was it indicated to the accused in any way that the court proposed to deal or was dealing with him as a second offender. It was a fact, however, that Collins had been convicted of burglary in Connecticut after a plea of *nolo contendere* within the five years next preceding the Pennsylvania offense. Collins served several years in prison before he learned that he had been dealt with and sentenced as a second offender.

Collins was paroled in 1940. He violated his parole by a theft for which he was convicted in Wisconsin. Thereafter, in 1946, he was returned to Pennsylvania as a convicted parole violator to serve the remainder of his twenty year term. He has now served sixteen years of the twenty year maximum sentence imposed in 1931.

By petition for habeas corpus, first in the state courts and now in the federal courts, Collins has asserted that so much of the sentence as was in excess of the ten year maximum provided by the statute under which he was indicted was imposed without due process of law and, therefore, affords no proper basis for his present detention. In disposing of this contention the state courts and the District Court have taken the position that though the trial court's procedure in arriving at the twenty year sentence may have been deficient and improper, the error was inconsequential because Collins now admits that he was in fact a second offender and as such subject to the enhanced punishment which was imposed upon him. See Com. ex rel. Collins v. Ashe, 159 Pa.Super. 553, 49 A.2d 265, 266; U. S. ex rel. Collins v. Ashe, D.C., 80 F.Supp. 914, 916; U. S. ex rel. Collins v. Claudy, D.C., 106 F.Supp. 367, 373. We understand this reasoning to be merely that Collins could lawfully have been sentenced to a twenty year term by proper procedure originally, not that he could now be re-

sentenced lawfully. For if the duly imposed portion of his sentence has expired, any resentence now would be the clearest double jeopardy.

■ Undoubtedly the procedure which attended the sentence was improper under Pennsylvania law. Section 5 of the Habitual Criminal Act, 19 P.S. § 925, provides that "A person need not be formally indicted and convicted as a previous offender in order to be sentenced under this act." For present reenactment see 18 Pa.Stat. Ann. § 5108(e). But it also is the law of Pennsylvania that, absent such notice in the indictment, "The defendant has a right to know at the time of his sentence that it has been increased because of his prior conviction * * *. [Moreover, the] facts on which the doubling of the term of a sentence depends should not rest in the undisclosed knowledge of the court but should appear plainly of record". See Commonwealth ex rel. Arnold v. Ashe, 1945, 156 Pa. Super. 451, 456, 40 A.2d 875, the relevancy of which to this conviction was expressly recognized by this court on relator's first appeal. U. S. ex rel. Collins v. Ashe, 3 Cir., 175 F.2d 555, 556. Moreover, records and decisions introduced into this record show that even while the present petitioner has been attempting to obtain his release, the quoted doctrine has enabled other prisoners to make successful collateral attacks in Pennsylvania courts upon enhanced sentences similarly imposed upon them without proper procedure. Commonwealth ex rel. Furpack v. Claudy, decided by the Pennsylvania Supreme Court February 1, 1951, not reported; Commonwealth ex rel. O'Leary v. Claudy, decided by the Court of Common Pleas for Allegheny County, February 7, 1952, not reported. Yet, the Pennsylvania courts which have considered petitioner's plight have taken the position that the error in this case was harmless and, therefore, nothing need be done beyond a

---

"Any person who, after having been convicted within or without this Commonwealth of the crime, or attempt to commit the crime, of * * * burglary, entering with intent to steal, * * * may, upon conviction of any of such crimes for a second offense committed

within five years after the first offense, * * * be sentenced to imprisonment for a term the maximum of which shall not be more than twice the longest term prescribed upon a first conviction for the crime in question." 19 P.S. § 921.

suggestion that in the future "for the sole purpose of achieving procedural uniformity," there should be some formal determination of prior conviction. See 159 Pa. Super. 553, 556, 49 A.2d 265, 266.

Can Pennsylvania, consistent with the Fourteenth Amendment, thus minimize the total omission of notice and hearing, the normal prerequisite of judicial determination of essential facts? We have no doubt that Pennsylvania can waive that which is merely a violation of state law or locally prescribed procedure. But is more than that involved here?

■ In determining whether the procedure by which a state has determined the guilt of an accused person squares with the requirements of due process the Supreme Court has repeatedly taken the position that the question whether the accused was in fact innocent or guilty of the crime charged is irrelevant and not to be considered. Thus, in the line of cases from Brown v. State of Mississippi, 1936, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682, through Watts v. State of Indiana, 1949, 338 U.S. 49, 69 S.Ct. 1347, 93 L.Ed. 1801, the Court has held that the barbarity of extorted confession may not be part of the procedure which leads to a conviction of crime regardless of whether the matter confessed is true or false and regardless of any and all other strongly persuasive evidence of guilt in the record. It is the teaching of all these cases that "the aim of the requirement of due process is not to exclude presumptively false evidence, but to prevent fundamental unfairness in the use of evidence whether true or false." See Lisenba v. California, 1941, 314 U.S. 219, 236, 62 S.Ct. 280, 290, 86 L.Ed. 166.

■ Closer to the present situation in the nature of the problem involved is Cole v. State of Arkansas, 1948, 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644. There the highest court of a state had sustained a conviction on the ground that the offense proved constituted a violation, not of the statutory provision upon which the indictment was grounded, but of a companion section of the same statute. The Supreme Court found it quite clear that this procedure offended the requirements of the Fourteenth Amendment. No question of guilt in fact could override the conception that "conviction upon a charge not made would be sheer denial of due process." See De Jonge v. State of Oregon, 1937, 299 U.S. 353, 362, 57 S.Ct. 255, 259, 81 L.Ed. 278. Even in civil cases where a personal judgment has been entered without according the defendant reasonable notice and opportunity to be heard, the state may not dilute the requirements of due process by requiring the defendant thereafter to show as a condition precedent to the vacating of the judgment that he has a substantial defense. Coe v. Armour Fertilizer Works, 1915, 237 U.S. 413, 35 S.Ct. 625, 59 L.Ed. 1027. Cf. Griffin v. Griffin, 1946, 327 U.S. 220, 66 S.Ct. 556, 90 L.Ed. 635. Thus, regardless of the merits, the establishment of the essential issues in a civil or criminal case must be after reasonable notice and opportunity to be heard if the procedure is to meet the standards of due process.

■ Certainly the foregoing doctrine protected the present relator in all that preceded the formal adjudication of his guilt of burglary. This case requires further analysis only because the courts have treated the determination of the facts of recidivism and the exercise of the judicial function in deciding upon any enhanced penalty authorized for such cases as something distinct from the principal determination of guilt or innocence. Moore v. State of Missouri, 1895, 159 U.S. 673, 16 S.Ct. 179, 40 L.Ed. 301; McDonald v. Com. of Massachusetts, 1901, 180 U.S. 311, 21 S.Ct. 389, 45 L.Ed. 542; Graham v. State of West Virginia, 1912, 224 U.S. 616, 32 S.Ct. 583, 56 L.Ed. 917. It is reasoned that at this stage of the case the court is determining the extent of culpability after guilt of a crime has been established. Accordingly, the tendency has been to move from the stringent requirements of due process before conviction toward the greater latitude normally allowed in sentencing in cases like Williams v. People of State of New York, 1949, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337, where, in the absence of any question of possible liability to enhanced penalty, the sentencing judge is permitted to fix punish-

ment, up to a statutory maximum already authorized by the verdict, in the light of any pertinent data and reports without informing the convicted person what data is being considered or granting him any hearing thereon. At the same time, it is established that even after conviction the due process clause imposes some significant restraint to assure the essential fairness of the procedure by which a judge shall exercise discretion in fixing punishment within permissible limits. Townsend v. Burke, 1948, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690. But cf. Gryger v. Burke, 1948, 334 U.S. 728, 68 S.Ct. 1256, 92 L.Ed. 1683. Such restraint is the more imperative in the present situation where the challenged sentence cannot lawfully be imposed upon the basis of the finding of guilty as charged in the indictment without more. Here there remains after conviction an issue to be tried with facts to be proved in order to elevate the offense to the aggravated class defined and punished by the Habitual Criminal Act.

■ The nature and significance of this additional inquiry is emphasized by procedures which have been adopted in various jurisdictions as appropriate for its prosecution. The early English statute of 6 and 7 William IV, c. 3, enabled the inclusion of a charge of aggravation by reason of a previous conviction in an indictment for the ultimate consideration of the trial jury, but forbade "the jury to inquire concerning such previous conviction until after they shall have inquired concerning such subsequent felony and shall have found such person guilty of the same * * *", and to the same end the statute provided further that "Whenever in any indictment such previous conviction shall be stated, the reading of such statement to the jury as part of the indictment shall be deferred until after such finding as aforesaid". Some states, West Virginia and Pennsylvania among them, have made specific provision for a separate trial of the issue of previous conviction in certain cases. See Graham v. West Virginia, supra; 18 Pa.Stat.Ann. § 5108(d). In addition, we think that in both Townsend v. Burke, supra, and Gryger v. Burke, supra, the Supreme Court, by

implication at least, has presupposed that under the Pennsylvania statute this issue, whether the subject of a separate trial or not, is to be determined only after the accused has been accorded some appropriate hearing. We have already indicated that the Pennsylvania cases, following Commonwealth ex rel. Arnold v. Ashe, supra, are to the same effect.

Such post-conviction consideration of the question of recidivism serves two important purposes. It is as essential to the establishment of a legal basis for any enhanced sentence as proof of premeditation is in many states for capital punishment for murder. The crime "is considered to be an aggravated offense because a repetitive one." See Gryger v. Burke, supra, 334 U. S. at page 732, 68 S.Ct. at page 1258. At the same time it also enables the court to employ informed judgment in the exercise of its far reaching discretion whether to impose additional punishment, and how much, on account of such prior conviction and attendant circumstances as the inquiry may reveal. Essential fairness dictates that the disposition of any issue thus determinative of the legal power of the tribunal and thereafter influential upon its discretion to punish a defendant must be after some notice to the accused that the issue is before the court followed by an opportunity to be heard. We can not see that this requirement is less important at that stage of the proceedings which provides essential justification for the imposition of the second half of a twenty year sentence than for the proceedings which made the first half lawful. Moreover, we can not see how any subsequent showing that the accused did not have a good defense can excuse the failure to found one part of the sentence more than the other upon the normally prerequisite procedure of notice and hearing.

■ We do not doubt that Collins has a very bad record of anti-social behavior. But all the greater need for care lest, perhaps without fully realizing it, we tolerate a little less than procedural due process for him, satisfying ourselves that normal requirements need "not be too fastidiously insisted upon in the case of wicked people." See Malinski v. People of State of New

York, 1945, 324 U.S. 401, 418, 65 S.Ct. 781, 790, 89 L.Ed. 1029. It must always be remembered that the innocent, for whose benefit primarily our fundamental procedural safeguards exist, can be protected effectively only if we insist strictly upon due process for all. The safeguard of procedural due process will be inadequate unless it shall be "inexorable". See the classic statement of Mr. Justice Brandeis in St. Joseph Stock Yards Co. v. United States, 1936, 298 U.S. 38, 73, 56 S.Ct. 720, 80 L.Ed. 1033; cf. Mr. Justice Roberts, dissenting, in Snyder v. Com. of Massachusetts, 1934, 291 U.S. 97, 137, 54 S.Ct. 330, 78 L.Ed. 674. If a few guilty persons win liberty thereby, the price is a small one to pay for the assurance we all gain that judicial procedure is and will be essentially fair.

Finally, if it were necessary to decision, we would think it appropriate to give weight to the relator's point that the notice and hearing which were denied him might have been very advantageous to him in the circumstances of this case. We do not know the facts in connection with the earlier Connecticut conviction except that a plea of *nolo contendere* was entered. But certainly that in itself suggests that the opportunity to explain the circumstances of that conviction might have persuaded the trial judge in this case not to impose an enhanced penalty, or at least to impose less than the maximum of ten additional years.

In another connection this court recently has emphasized the importance and value of an opportunity to show mitigating circumstances which might have appealed to the discretion of the tribunal in its determination of an appropriate sentence, even though those circumstances would not have reduced the power of the tribunal to impose a maximum penalty. United States ex rel. Almeida v. Baldi, 3 Cir., 1952, 195 F.2d 815. There concealment by the prosecution prevented such data from being considered. Here there was total denial of any notice that the matter of aggravation was in issue. Yet, "for the determination of sentences, justice generally requires consideration of more than the particular acts by which the crime was committed and

that there be taken into account the circumstances of the offense together with the character and propensities of the offender." See Com. of Pennsylvania ex rel. Sullivan v. Ashe, 1937, 302 U.S. 51, 55, 58 S.Ct. 59, 61, 82 L.Ed. 43. Indeed, denial of a fair chance to influence the discretion of a sentencing judge seemed in itself a denial of due process to four Justices in Gryger v. Burke, supra. It should at least serve as a makeweight toward a finding of essential unfairness here.

■ On the whole case we are satisfied that fundamental fairness in judicial procedure required that the court impose an enhanced penalty only upon the basis of a supporting judicial determination of the essential facts made after the defendant had been informed of and heard upon the issue of recidivism. The omission of such procedure was a denial of due process of law and, therefore, has made the enhanced penalty a legal nullity. Reluctant as we are to reach this conclusion contrary to the decision the courts of Pennsylvania have reached with reference to this prisoner, we are the more confident of the correctness of our position because, as already has been pointed out, it seems to be in accord with the result the Pennsylvania courts have reached very recently in analogous cases. Moreover, we think what we decide respects the traditional view of the great jurists of the Commonwealth, so plainly stated by Chief Justice Agnew when he said: "As a general principle the punishment inflicted upon a citizen for any offence should appear by the record to be the lawful consequence of his conviction of that offence. * * * On every principle of personal security and the due administration of justice, the fact which gives rightfulness to the greater punishment should appear in the record. To leave to a judge to determine it outside of the record is to subject the defendant to an unconstitutional mode of trial." See Rauch v. Commonwealth, 1875, 78 Pa. 490, 494.

■ Our opinion that the petitioner already has been imprisoned several years without lawful authority makes us believe

that his release should not be delayed. At the same time, and despite the fact that the appropriate officers of the Commonwealth of Pennsylvania have not seen fit to appear or defend this appeal in any way,[3] representatives of the Commonwealth are entitled to seek a review of this decision if they shall be so advised. Therefore, in order to achieve a reasonable accommodation of the interests of the individual and the state we will entertain a request for the enlargement of the petitioner on bail pending final disposition of this case if any further proceedings shall postpone the issuance of the mandate of this court in normal course. See our Rule 15(3); Supreme Court Rule 45(3), 28 U.S.C.A.

The judgment will be reversed with direction that the writ of habeas corpus shall issue and the relator shall be discharged from custody as prayed.

3. In contrast the relator has been most ably and vigorously, albeit with fairness and objectivity, represented by a member of the bar assigned to that task some three years ago by the District Court. The labors of counsel have been time consuming and expensive, without expectation of any fee. They could not have been more diligent for the most valued client. Such representation carries forward the highest tradition of the lawyer as a public servant and an officer of the courts dedicated to the cause of justice.