**114**

UNITED STATES ex rel. Claude
F. SWINGLE
v.
A. T. RUNDLE, Superintendent, State
Correctional Institution.
Misc. No. 2371.

United States District Court
E. D. Pennsylvania.
April 27, 1962.

Lawrence Goldberg, Philadelphia, Pa., for petitioner.

Louis B. Nillsen, Dist. Atty., Wayne County, Honesdale, Pa., and Frank P. Lawley, Jr., Deputy Atty. Gen., Harrisburg, Pa., for respondent.

FREEDMAN, District Judge.

More than ten years after relator had been sentenced to life imprisonment on his plea of guilty of murder, the Supreme Court of Pennsylvania, on his petition for a writ of habeas corpus, set the sentence aside with direction to the Court below, the Court of Oyer and Terminer of Wayne County, to impose a proper and legal sentence. The sentence had been rendered on June 20, 1949. It was set aside by the Supreme Court of Pennsylvania on December 30, 1959. The Court of Oyer and Terminer believed that the sentence was required by § 701 of The Penal Code, Act of 1939, P.L. 872, 18 P.S. § 4701, which makes mandatory a sentence of life imprisonment for a second offense of murder in the second degree. The Supreme Court of Pennsylvania held that § 701 was inapplicable to the relator because the prior offense of second degree murder had been committed outside Pennsylvania: Com. ex rel. Swingle v. Banmiller, 398 Pa. 43, 156 A.2d 520 (1959).

In the briefs filed with the Supreme Court of Pennsylvania the District Attorney of Wayne County urged that in the event the Court held that the life sentence was improper, the case should be remanded to the Court below for proceedings under § 1108 of The Penal Code, Act of 1939, P.L. 872, 18 P.S. § 5108, the Habitual Offenders Act. Section 1108 authorizes a maximum sentence of double the longest term prescribed for the first offense, and applies regardless of whether the prior offense was committed outside the Commonwealth. This section, therefore, unlike § 701, was applicable to the relator's case and would authorize, in the discretion of the Court, an increase in his sentence to a maximum of double the longest term of twenty years for murder in the second degree. The opinion of the Supreme Court of Pennsylvania, however, made no reference to the District Attorney's suggestion, but simply remitted the record to the Court below for the imposition of a "proper and legal sentence".

Thereupon, the District Attorney of Wayne County presented a petition to the Court of Oyer and Terminer of Wayne County praying for the imposition of sentence under § 1108 of The Penal Code. Relator did not contest the fact of the prior offense, and raised no factual issue. He did object, however, to the imposition of the increased penalty beyond the maximum of twenty years fixed by § 701 of The Penal Code for second degree murder. The lower Court, exercising its discretion under § 1108 of The Penal Code, imposed the maximum penalty of double the maximum fixed for second degree murder and on May 3, 1960, sentenced the relator to imprisonment for twenty to forty years. This sentence the relator attacked by a petition for a writ of habeas corpus in the Supreme Court of Pennsylvania. The Supreme Court, in Commonwealth v. Swingle, 403 Pa. 293, 169 A.2d 871 (1961), sustained the judgment of sentence, holding that the lower Court had power to impose a proper and legal sentence under § 1108(a) and on remand for resentencing was not, as relator contend-ed, restricted " * * * to either the facts which were presented to the sentencing Court in 1949, nor to the section of the Code under which Swingle was illegally sentenced." (p. 296, p. 872 of 169 A.2d) Certiorari was denied by the Supreme Court of the United States: Swingle v. State of Pennsylvania, 368 U.S. 862, 82 S.Ct. 107, 7 L.Ed.2d 59 (1961).

Petitioner now seeks by writ of habeas corpus to have us invalidate the sentence imposed on him under § 1108(a) as an habitual offender, although his prayer for relief is couched in terms of modification of the present sentence and allowance of a parole hearing.

The question presented is whether it is a violation of the relator's rights under the Due Process Clause of the Fourteenth Amendment to invoke the Habitual Offenders Act eleven years after the original sentence, when no notice or indication of intention to invoke it had been presented at the time of the original sentence and first appeared only after he had challenged on habeas corpus the validity of the original sentence to life imprisonment.

It is well settled and has very recently been reaffirmed that "due process does not require advance notice that the trial on the substantive offense will be followed by an habitual criminal proceeding": Oyler v. Boles, 368 U.S. 448, 452, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962). All that is required is that the defendant receive reasonable notice and an opportunity to be heard on the recidivist charge. Oyler v. Boles, supra, p. 452, 82 S.Ct. p. 504; United States ex rel. Collins v. Claudy, 204 F.2d 624 (3d Cir. 1953). The consideration of prior offenses is said to relate to the sentence and the notice therefore need not be given at or prior to the trial of the substantive offense. (Chandler v. Fretag, 348 U.S. 3, 8, 75 S.Ct. 1, 99 L.Ed. 4 (1954); Graham v. State of West Virginia, 224 U.S. 616, 625, 32 S.Ct. 583, 56 L.Ed. 917 (1912)). This is illustrated in the Crabtree case reported in Oyler v.

Boles, 368 U.S. at 450–451, 82 S.Ct. at 503. There a defendant pleaded guilty to forging a $35. check, an offense which carried a penalty of from two to ten years imprisonment. Thereafter, the Habitual Offenders Act of West Virginia was invoked against him because of two previous felony convictions. He was sentenced to life imprisonment as an habitual offender and the sentence was sustained by the Supreme Court.

What remains for us since the law is so well established, is in a different chronological setting. Notice here was not given prior to defendant's plea of guilty. As we have seen, it was not required. The District Attorney carefully complied with the requirements laid down by our Court of Appeals in United States ex rel. Collins v. Claudy, 204 F.2d 624 (3d Cir. 1953). Relator had three months notice that he would be resentenced as an habitual offender. His claim is that after his successful attack in the Supreme Court of Pennsylvania on the original sentence to life imprisonment it was too late for the Commonwealth, even by giving him full and meticulous notice in advance of the resentencing, to invoke § 1108 (the Habitual Offenders Act) and seek to double the maximum term, something which it had not sought to do eleven years earlier at the time of the original sentence. This, he contends, is because the only lawful and valid punishment that could have been imposed on his resentencing was one based upon the record as it existed at the time of the original sentence.

The practical reason for the present proceeding is that if the sentence is reduced from a maximum term of forty years to a maximum term of twenty years, the relator, who has now served more than the minimum term of ten years, will be eligible to seek parole. Thompson v. Cavell, 158 F.Supp. 19 (W. D.Pa.1957).

Relator's reliance on United States ex rel. Collins v. Claudy, supra, is misplaced.

Judge Hastie there said that the defendant, who had been sentenced under the Act of April 29, 1929, P.L. 854, 19 P.S. § 921 (now § 1108 of The Penal Code) for a term double the maximum of ten years, but without prior notice that the Habitual Criminal Act would be invoked against him, "could lawfully have been sentenced to a twenty year term by proper procedure originally, *not that he could now be resentenced lawfully. For if the duly imposed portion of his sentence has expired, any resentence now would be the clearest double jeopardy.*" (204 F.2d p. 626) In the Collins case, at the time it was determined that due process had been violated, the defendant had already served sixteen years of the doubled maximum amounting to twenty years, so that the maximum penalty of ten years permitted for his crime—the Habitual Criminal Act aside—had expired. Hence Judge Hastie held that there could be no resentencing at that time. In the present case the defendant has served only eleven years of a maximum twenty-year sentence for second degree murder—the Habitual Offenders Act aside. The principle is fundamental and was stated as far back as Murphy v. Commonwealth of Massachusetts, 177 U.S. 155, 20 S.Ct. 639, 44 L.Ed. 711 (1899), that it is only when the original sentence was already fully satisfied that resentencing violated the defendant's constitutional rights.[1]

■ Accepting, as we must, the binding principle that notice of the invocation of the Habitual Offenders Act was not required to be given prior to the trial or plea of guilty, but only prior to the imposition of sentence, it follows that the defendant's right to due process was not infringed because after he had successfully attacked the original sentence he was duly resentenced after adequate notice that the Habitual Offenders Act would be invoked. All this was at a time when the maximum period for which he could have been sentenced originally had not yet expired. The defendant

1. In that case, the defendant was resentenced under a statute different from the one under which the original sentence was imposed. See also Hollis v. Ellis, 201 F. Supp. 616 (S.D.Tex.1961).

may not escape the enlarged penalty authorized by § 1108 because the prosecutor and the court, after his plea of guilty, deemed a life sentence mandatory and did not invoke the Habitual Offenders Act, which unquestionably would have authorized a doubling of the sentence at that time. After the invalid life sentence was set aside and the Supreme Court of Pennsylvania remitted the record to the Court below for the imposition of a lawful and valid sentence, the lower Court had full authority to treat the matter de novo. To this case is fully and justly applicable the language of Bozza v. United States, 330 U.S. 160, 166, 167, 67 S.Ct. 645, 648, 91 L.Ed. 818 (1946): "The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner."

ORDER

AND NOW, April 27, 1962, the petition of Claude F. Swingle for a writ of habeas corpus is denied.