# Kane *versus* The Commonwealth.

1. The joinder in an indictment of a count of manslaughter to a count of murder, with an averment that the prisoner had previously been convicted of manslaughter, is proper, when it is sought to impose upon the prisoner, in case he be found guilty of manslaughter only, the double punishment provided under the Act of March 31st, 1860, § 182, (P. L. 426), for a second conviction of manslaughter.

2. In such a case the Commonwealth may put in evidence the record of the previous conviction, and if the defendant or his counsel admit his identity with the person named in the record of the previous indictment, the Commonwealth is relieved from the necessity of proving his identity.

3. Dying declarations must be made at the time and place of shooting in order to be admitted as part of the *res gestæ*; before such declarations, alleged to have been made sometime after the shooting, will be admitted in evidence, it must be shown that the declarant was aware of his approaching death.

April 9th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GREEN, J., absent.

[Kane *v.* Commonwealth.]

ERROR to the Court of Oyer and Terminer of *Philadelphia county :* Of January Term 1885, No. 415.

Indictment of James Kane for the killing of Andrew Kane. The indictment contained two counts; the first in the usual form charged the crime of murder, the second, manslaughter; to the latter was appended an averment that James Kane had been indicted for murder at the September Sessions 1872, of the Court of Oyer and Terminer, Philadelphia county, convicted of manslaughter and sentenced to seven years and eleven months in the Penitentiary.

On the trial, before HARE, P. J., before any testimony was offered connecting the prisoner with the crime, the record of a former indictment and conviction of manslaughter was offered in evidence. Objected to. Objection overruled and evidence admitted. Exception. (First assignment of error.) The defence thereupon admitted the identity of the prisoner with the James Kane mentioned in the above indictment. From the evidence it appeared that James Kane kept a tavern at Eighth and South street, in the city of Philadelphia, which was frequented by thieves and where the deceased, Andrew Kane, a brother of the prisoner, spent most of his time, although he did not live there. The brothers had had two slight quarrels within a fortnight of the killing. On the evening of January 11th, 1885, the brothers came into the bar-room together and James was heard to remark emphatically " I told you, no." A few moments later Andrew Kane attempted to go up stairs when he was met by his brother and some conversation passed between them which was not heard, but two pistol shots were heard in quick succession and Anderw Kane staggered back into the room and afterwards fell to the floor. Later, he was taken to the Pennsylvania Hospital, where he died early the next morning from the effects of the wound. John McCloskey, a witness for the Commonwealth, testified as follows:—" I was standing at the bar, not looking in that direction at the time, but as I heard the report of the first shot I looked around and just then I saw the flash and heard the report of the second shot. I saw James Kane fire the second shot. He was about two feet away from Andy when the last shot was fired. I saw the pistol in his hand." At the time of the shooting, both men were somewhat under the influence of liquor, although it was testified that James Kane " could talk intelligently and knew what he was doing."

The defendant offered to prove by the brother-in law of the deceased the dying declaration of the deceased that James Kane did not do the shooting. Objected to on the ground that there was no evidence that the deceased knew he was

[Kane v. Commonwealth.]

about to die. Objection sustained and evidence excluded. Exception. (Third assignment of error.)

Verdict, guilty of murder in the first degree in manner and form as indicted. The court entered judgment on the verdict, and thereupon sentenced the prisoner to be hung.

The prisoner's counsel took this writ of error, assigning for error the joinder in the indictment of a count for manslaughter with an averment of a former conviction of manslaughter; the admission of the record of said former conviction in evidence without further proof of the identity of the prisoner than was contained in the admission of counsel; the refusal to admit the dying declaration in evidence, and the entry of a verdict of murder in the first degree.

*Edmund Randall* (with whom was *Thomas M. Keeley*), for the plaintiff in error.—It is needless to quote the long line of authorities to establish the proposition that one crime cannot be given in evidence against a prisoner upon trial for a separate and distinct offence. See Swan *v.* Commonwealth, 8 Out., 218; State *v.* Lapage, 57 N. H., 245.

Notwithstanding the great wrong done the prisoner, by charging him with another and separate offence, an offence the law offers him no opportunity to defend himself against, yet the Commonwealth in the court below contended that they were justified in the indictment against the prisoner for *murder*, also of charging him with two unconnected crimes of *manslaughter*, for the purpose they claim, in case of his conviction of one crime of manslaughter the court would be enabled, in their discretion, to impose upon him a double sentence under Sec. 182, Revised Penal Code, Purdon, 372, Sec. 302. As authority for this position, Rauch *v.* Commonwealth, 78 Pa. St. R., 490, is cited.

It is submitted that the principle announced in Rauch *v.* Commonwealth, has no application to the case now in hand.

The Commonwealth claims that it was released from the necessity of proving by *witness under oath* that the James Kane on trial was one and the same person mentioned in the record in evidence, *by the admission of such a fact by counsel for the prisoner.*

In a criminal case, especially a capital one, counsel can neither agree to, nor admit anything: Mills *v.* Commonwealth, 1 Harris, 627; Peiffer *v.* Commonwealth, 3 Id., 468.

The law does not require positive evidence that the deceased knew he was dying; it may be inferred from his conduct, the nature of the wound, and the surrounding circumstances, nor is it necessary to prove expressions of an apprehension of death,

if his condition was such that he must have felt that he was a dying man:   Roscoe's Crim. Ev., 30.

This remark of the deceased, that the prisoner had not shot him, was admissible upon other grounds than a dying declaration.   It was part of the *res gestœ :* 1 Greenleaf on Ev., § 108.

*George S. Graham*, district attorney, for the Commonwealth.—Under the 182d section of the Penal Code, a double punishment is provided for the second conviction of manslaughter.   The object to be attained by the insertion of the count for manslaughter, was to secure the necessary conditions to enable the court to impose a double punishment if the jury should fix the degree of guilt at manslaughter.

If the prisoner was powerless to make an admission concerning the identity, then there was simply a failure of proof on that point.   If the prisoner had been convicted of the second offence of manslaughter, then the failure of proof might have been of great importance; but since the jury have found that the killing was a wilful, deliberate, and premeditated one, this failure of proof becomes unimportant.

The jury were carefully guarded by the court and counsel from considering the former conviction in making up their minds to the degree of guilt.

Mr. Justice GORDON delivered the opinion of the court, April 20th, 1885.

This case was as well tried in the court as it could be; the counsel for the defendant omitted nothing that he ought to have done, and the failure was not for the want of any skill or ability on his part, but because of the desperate character of the case.   The joinder of the two counts of murder and manslaughter in the indictment was not the subject of successful objection, hence exception to it in the court below would have been to no purpose.   Ordinarily such joinder is useless, as the jury may convict of manslaughter on the count for murder, but where the object is to include a second offence under the 182d section of the Act of March, 1860, there may well be a count for the minor offence.   So the complaint that the record of the previous conviction was set forth in the indictment, and offered in evidence on the trial, has nothing in it, for in this manner alone can the provisions of the statute be carried into effect:   Rauch *v.* The Commonwealth, 28 P. F. S., 494.   It is true, the exhibition, in this manner, of the defendant's previous crime may have a very bad effect upon his character, but this result must be charged to his own default, and to the statute which looks rather to the protection of the law-abiding community than to the welfare of the criminal

[John's Adm'r v. Pardee.]

class.  Nor need we say that it was entirely proper for the defendant, through his counsel, to admit his identity as defendant in the former indictment.  He was under no kind of constraint, and by this he improved rather than impaired his case. As well might it be said that a defendant ought not to be called upon to admit his identity on arraignment; that he might not admit any fact during trial, or that he might not confess himself guilty of the whole charge laid against him in the indictment, by a plea to that effect.  To make such admission and confession is the right of the defendant, and of it he cannot be deprived.  Whether he will exercise a priviledge of this kind is not for the court, but for himself and his counsel to determine.

The remaining exceptions have, if possible, less in them than the one of which we have just disposed, and the third assignment, the one which excepts to the court's refusal to admit in evidence the dying declarations of Andrew Kane, the decedent, is that alone which, as we think, merits discussion.

The testimony thus offered cannot be regarded as part of the *res gestæ*, for these declarations were made neither at the time nor place of the shooting, but some hours after, in the hospital.  As therefore, they could not be regarded as part of the immediate transaction, to qualify them as admissible declarations, they must have been made under circumstances of such solemnity as to be equivalent to a judicial oath; that is, the declarant must have been impressed by a knowledge of his approaching death.  But of this there was no proof offered.  It was not made to appear, by Kane's declarations or otherwise, that he had any sense of impending dissolution, and without such proof the proposed evidence was properly rejected.

The judgment of the court below is now affirmed, and it is ordered that the record be remitted for execution.