855 A.2d 800

COMMONWEALTH of Pennsylvania, Appellee,

v.

Melvin APONTE, Appellant.

Supreme Court of Pennsylvania.

Argued Oct. 23, 2002.

Decided Aug. 19, 2004.

248

Robin S. Forrest, Philadelphia Leonard N. Sosnov, John Packel, Philadelphia, for Melvin Aponte

Hugh J. Burns, Joan Weiner, Philadelphia, for Com.

Before ZAPPALA, C.J., CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN, JJ.

## *OPINION*

Justice EAKIN.

We granted allowance of appeal to determine whether 35 P.S. § 780–115(a), which doubles the statutory maximum penalty upon proof of a prior conviction for a similar offense, without requiring proof beyond a reasonable doubt before a jury, violates due process under the Pennsylvania and United States Constitutions. We conclude § 780–115(a)'s sentencing enhancement is constitutionally valid, and affirm.

After willfully absenting himself from trial, appellant was tried *in absentia* before a jury which convicted him of possession with intent to deliver a controlled substance (PWID), and

conspiracy. A presentence report was ordered, but appellant remained a fugitive. The presentence investigator sent a letter to appellant's mother, and gathered information "from the Court Deferred File (R.O.R. background information in that file), the prison computer information (background information is in there also), the Family Court File # 345614 which was generated as a result of one of [appellant's] brother's juvenile arrest [sic], and from the Probation file." Pre–Sentence Report, 6/13/01, at 1. The report also listed the Connecticut State Prison–Parole Records as a source of information. *Id.*, at 3. The report noted appellant had three convictions: 1994 Felony Drugs in Connecticut; 1997 Felony Drugs in Philadelphia; and the present matter. *Id.*, at 2.

Because this was appellant's third drug offense, the sentencing court applied the sentencing enhancement in 35 P.S. § 780–115:

Second or subsequent offense

(a) Any person convicted of a second or subsequent offense under clause (30) of subsection (a) of section 13 of this act *or of a similar offense under any statute of the United States or of any state,* may be imprisoned for a term up to twice the term otherwise authorized, fined an amount up to twice that otherwise authorized, or both.

35 P.S. § 780–115(a) (emphasis added).

Accordingly, the trial court sentenced appellant, *in absentia,* to 10–20 years imprisonment for possession with intent to deliver-twice the statutory maximum "otherwise authorized." The court also imposed twice the statutory maximum sentence for appellant's conspiracy conviction.

On appeal, the Superior Court affirmed the sentence. Relying on *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the court concluded the Commonwealth need not have pled the prior convictions in the information, nor was it required to establish them beyond a reasonable doubt before a jury. However, the Superior Court vacated the enhanced sentence for conspiracy and remanded for resentencing, concluding § 780–115(a) applies only to simi-

lar *drug* offenses, not the underlying inchoate crimes. After reargument was denied, appellant sought and was granted review by this Court.[1]

Appellant argues 35 P.S. § 780–115(a) violates due process under the United States and Pennsylvania Constitutions, because it raises the maximum penalty for recidivist drug offenders, making the prior convictions an element of the "second or subsequent offense" without requiring they be proven beyond a reasonable doubt before a jury.

"[W]e begin our analysis by recognizing that there is a strong presumption in the law that legislative enactments do not violate the constitution. Moreover, there is a heavy burden of persuasion upon one who challenges the constitutionality of a statute." *Commonwealth v. Barud,* 545 Pa. 297, 681 A.2d 162, 165 (1996) (citations omitted). As a matter of statutory construction, we presume "the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth." 1 Pa.C.S. § 1922(3). A statute will not be declared unconstitutional unless it clearly, palpably,

---

1. The Commonwealth argues this issue is waived because appellant failed to raise it in the trial court or in his Pa.R.A.P.1925(b) Statement of Matters Complained of on Appeal, but raised it for the first time in his brief to the Superior Court. However, in a similar situation, where an appellant failed to challenge the constitutionality of his sentence in post sentence motions or in his Rule 1925(b) statement, the Superior Court held the issue implicated the legality of sentence and was thus non-waivable. *Commonwealth v. Wynn,* 760 A.2d 40 (Pa.Super.2000). This Court granted allowance of appeal and did not hold the issue was waived, but rather concluded *per curiam* reversal was appropriate because the sentencing statute had been declared unconstitutional in *Commonwealth v. Butler,* 563 Pa. 324, 760 A.2d 384 (2000). *Commonwealth v. Wynn,* 567 Pa. 183, 786 A.2d 202 (2001). Recently, in *Commonwealth v. Belak,* 573 Pa. 414, 825 A.2d 1252 (2003), the appellant raised an *Apprendi* issue in his brief to this Court, but had not first included it in his petition for allowance of appeal. We held, "Although arguments of an unlawful sentence cannot be waived, *see, e.g., Commonwealth v. Walker,* [] 468 Pa. 323, 362 A.2d 227, 230 ([] 1975), this issue is not properly before this Court. Belak did not raise this issue in his petition for allowance of appeal or in his initial brief to this Court, but rather, raised it for the first time in his reply brief. As such, it would be improper for us to consider this issue." *Belak,* at 1256 n. 10. Here, appellant's issue raises a challenge to the legality of his sentence, and was raised in his petition for allowance of appeal; we will consider the issue.

and plainly violates the Constitution; all doubts are to be resolved in favor of a finding of constitutionality. *Commonwealth v. Hendrickson*, 555 Pa. 277, 724 A.2d 315, 317 (1999).

 Appellant first claims § 780–115 violates the Sixth [2] and Fourteenth Amendments to the United States Constitution. In *Apprendi v. New Jersey, supra,* the United States Supreme Court squarely addressed the issue of whether a fact which increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proven beyond a reasonable doubt. *Apprendi* involved a "hate crime" statute which provided for an enhanced sentence if the trial judge found, by a preponderance of the evidence, the defendant committed the crime to intimidate a person or group because of race. *See* N.J. Stat. Ann. § 2C:44–3(e) (West Supp.2000). The defendant pled guilty to possession of a firearm for an unlawful purpose, a second degree offense punishable by 5 –10 years imprisonment. *Id.,* §§ 2C:39–4(a), 2C:43–6(a)(2). Under the hate crime enhancement, the authorized prison term for second degree offenses was 10–20 years. *Id.,* § 2C:43–7(a)(3). The trial judge found the defendant's actions were taken with the purpose of intimidating the African–American family who lived in the house where he fired the shots, and imposed the enhanced sentence. The New Jersey Superior and Supreme Courts affirmed.

The United States Supreme Court reversed, holding the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, as applied to the states through the Fourteenth Amendment, require:

> *Other than the fact of a prior conviction,* any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt.... "It is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a

**2.** The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...." U.S. Const. amend. VI.

criminal defendant is exposed. It is equally clear that such facts must be established beyond a reasonable doubt."

*Apprendi*, at 490, 120 S.Ct. 2348 (emphasis added) (quoting *Jones v. United States*, 526 U.S. 227, 252–53, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999)).

Prior to *Apprendi*, the Supreme Court first addressed the issue of what constitutes a "sentencing factor" in *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). *McMillan* involved a challenge to Pennsylvania's Mandatory Minimum Sentencing Act, 42 Pa.C.S. § 9712 (1982), which contained a provision mandating a minimum sentence of five years imprisonment if the judge found, by a preponderance of the evidence, the defendant visibly possessed a firearm while committing one of the specified felonies. *Id.*, § 9712(a). The High Court concluded the statute did not violate the constitutional requirement that the State bear the burden of proving guilt, but noted the statute at issue did not "*alter[] the maximum penalty* for the crime committed ... it operate[d] solely to limit the sentencing judge's discretion in selecting a penalty within the range already available to it[,]" *McMillan*, at 87–88, 106 S.Ct. 2411 (emphasis added), and that the appellant's argument that visible possession of a firearm was an element of the offense "would have at least more superficial appeal if a finding of visible possession *exposed [him] to greater or additional punishment ....*" *Id.*, at 88, 106 S.Ct. 2411 (emphasis added).

Over a decade after *McMillan*, the Supreme Court again faced the question of the distinction between a "sentencing factor" and an "element" in *Almendarez–Torres v. U.S.*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). *Almendarez–Torres* involved a federal statute authorizing an increase in the maximum sentence for an alien found in the United States after being deported, if the initial deportation was subsequent to a conviction for an aggravated felony. 8 U.S.C. § 1326(b)(2). The appellant had pled guilty to the offense, admitting he had three aggravated felony convictions before his initial deportment; however, on appeal, he argued he was not subject to the enhanced sentence because the indictment

failed to mention the prior convictions. The Supreme Court held § 1326(b)(2) was a penalty provision which did not define a separate offense; therefore, the prior aggravated felony convictions did not have to be charged in the indictment, *Almendarez–Torres*, at 226–27, 118 S.Ct. 1219, or found by a jury. *Id.*, at 235, 118 S.Ct. 1219.

One year later, the Supreme Court clarified the holding in *Almendarez–Torres*, noting, "Congress had never clearly made prior conviction an offense element where the offense conduct, in the absence of recidivism, was independently unlawful." *Jones v. United States, supra* (federal carjacking statute, 18 U.S.C. § 2119, defined three distinct offenses, rather than one offense with three maximum sentence options; each offense must be charged, submitted to jury, and proven beyond reasonable doubt).[3]

*Apprendi*, decided one year after *Jones*, made clear that any fact which increases the maximum penalty must be submitted to a jury and proved beyond a reasonable doubt.[4] However, the *Apprendi* Court was careful to delineate prior

3. *See also Apprendi*, at 487, 120 S.Ct. 2348. The majority in *Apprendi* commented that *Almendarez–Torres* represented, at best, an "exceptional departure" from the historical practice of treating facts which exposed a defendant to a greater punishment than that prescribed as "elements" of a separate offense. *Id.* The majority also noted the defendant in *Almendarez–Torres* had admitted his three prior convictions, so no question concerning the right to a jury trial or the standard of proof was before the Court; rather, the sufficiency of the indictment was the specific issue in that case. *Id.*, at 488, 120 S.Ct. 2348. Further, the prior convictions in *Almendarez–Torres*, unlike the sentence enhancement in *Apprendi*, had been entered in a proceeding where the defendant had the right to a jury trial and proof beyond a reasonable doubt. *Id.* Thus, the majority concluded, with respect to *Almendarez–Torres*, although that case was arguably decided incorrectly, "[g]iven its unique facts, it surely does not warrant rejection of the otherwise uniform course of decision during the entire history of our jurisprudence." *Apprendi*, at 489, 120 S.Ct. 2348. The *Apprendi* Court further held *McMillan* was limited "to cases that do not involve the imposition of a sentence more severe than the statutory maximum ...—a limitation identified in the *McMillan* opinion itself." *Apprendi*, at 487 n. 13, 120 S.Ct. 2348.

4. *Apprendi* did not address the indictment issue separately, as the appellant did not assert a claim based on the omission of any reference to sentence enhancement in the indictment. *Id.*, at 477 n. 3, 120 S.Ct. 2348.

convictions as an exception to this requirement, for the following reasons:

> Whereas recidivism "does not relate to the commission of the offense" itself, . . . New Jersey's biased purpose inquiry goes precisely to what happened in the "commission of the offense." Moreover, *there is a vast difference between accepting the validity of a prior judgment of conviction entered in a proceeding in which a defendant had the right to a jury trial and the right to require the prosecutor to prove guilt beyond a reasonable doubt, and allowing the judge to find the required fact under a lesser standard of proof.*

*Id.,* at 496, 120 S.Ct. 2348 (citation omitted) (emphasis added).

Two years after *Apprendi,* the Supreme Court decided *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). In *Ring,* a jury convicted the defendant of felony murder committed in the course of an armed robbery, but was deadlocked on whether he was guilty of premeditated murder; the facts at trial were insufficient. Thus, the defendant was eligible for the death penalty only if he was the actual killer or had been a major participant in the robbery which led to the killing. The state's capital sentencing statute provided for the trial judge, sitting alone, to determine the existence of aggravating factors warranting imposition of the death penalty. *See* Ariz.Rev.Stat. Ann. § 13–703(C) (West 2001). The trial judge determined, based on the sentencing hearing testimony of a co-defendant, that the defendant was not only a major participant, but also had been the killer; consequently, the trial judge found two aggravating factors.[5] Concluding these factors outweighed the one mitigating factor, the trial judge sentenced the defendant to death. The Arizona Supreme Court affirmed. In reversing the judgment of that court, the United States Supreme Court relied upon *Apprendi,* noting:

5. The judge determined the defendant "committed the offense . . . in expectation of the receipt[ ] of anything of pecuniary value," Ariz.Rev. Stat. Ann. § 13–703(G)5, and "in an especially heinous, cruel or depraved manner." *Id.,* § 13–703(G)6.

Capital defendants, no less than non-capital defendants, we concluded, are entitled to a jury determination on *any fact* on which the legislature conditions an increase in their maximum punishment.

\* \* \*

If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, *that fact—no matter how the State labels it*—must be found by a jury beyond a reasonable doubt.

*Ring,* at 2432 (emphasis added), 2439 (emphasis added) (citing *Apprendi,* at 482–83, 120 S.Ct. 2348).

Appellant argues *Ring*'s failure to mention *Apprendi*'s prior conviction exception evinces its intent to retract the exception, and that now, prior convictions are required to be proven beyond a reasonable doubt, as is any fact which increases the maximum sentence. We disagree with this fractured reading of *Ring;* the key issue in *Ring* was how to reconcile *Apprendi* with *Walton v. Arizona,* 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), which had held the aggravating factors in § 13–703(G) were "sentencing considerations," not "elements," and thus could be found by the trial judge.[6] Thus, because *Ring* was not dealing with prior convictions as aggravating circumstances, mention of *Apprendi*'s prior conviction exception was unnecessary. As the Court noted:

> Ring's claim is tightly delineated: He contends only that the Sixth Amendment required jury findings on the aggravating circumstances asserted against him. No aggravating circumstance related to past convictions in his case; Ring therefore does not challenge *Almendarez–Torres* [], which held that the fact of prior conviction may be found by the judge even if it increases the statutory maximum sentence.

*Ring,* at 597 n. 4.

Accordingly, we reject appellant's argument that *Appren-*

6. In light of *Apprendi,* the Court overruled *Walton. Ring,* at 2443.

*di*'s prior conviction exception has been tacitly overruled.[7]

■ Our analysis does not end here, however, as appellant also contends § 780–115 violates Article I, §§ 6 and 9 of the Pennsylvania Constitution. "This Court has long emphasized that, in interpreting a provision of the Pennsylvania Constitution, we are not bound by the decisions of the United States Supreme Court which interpret similar (yet distinct) federal constitutional provisions." *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887, 894 (1991) (citations omitted).[8] Moreover, this Court has recognized that our state constitution can provide greater rights and protections to the citizens of this Commonwealth than those provided under similar provisions of the federal constitution. *Id.*

> [T]he federal constitution establishes certain minimum levels which are equally applicable to the [analogous] state constitutional provision. However, each state has the power to provide broader standards, and go beyond the minimum floor which is established by the federal Constitution.

*Id.* (quoting *Commonwealth v. Sell,* 504 Pa. 46, 470 A.2d 457, 466 (1983)) (citation omitted).

Appellant claims Article I, §§ 6 and 9 of the Pennsylvania Constitution require the right to a jury trial in cases where recidivism results in an enhanced sentence because such right

---

7. Our conclusion in this regard is confirmed by a recent decision of the Supreme Court. See *Blakely v. Washington,* —— U.S. ——, ——, 124 S.Ct. 2531, 2536, 159 L.Ed.2d 403, —— (2004) (reciting, with approval, the *Apprendi* rule, complete with its exception for prior convictions).

8. In *Edmunds,* this Court set forth four factors to be briefed and analyzed by litigants asserting state constitutional claims:

1) text of the Pennsylvania Constitutional provision;
2) history of the provision, including Pennsylvania case law;
3) related case law from other states;
4) policy considerations, including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence.

Depending upon the particular issue presented, an examination of related federal precedent may be useful as part of the state constitutional analysis, not as binding authority, but as one form of guidance. However, it is essential that courts in Pennsylvania undertake an independent analysis under the Pennsylvania Constitution. *Edmunds,* at 895.

existed at common law. *See* Pa. Const. art. I, § 6 ("trial by jury shall be as heretofore, and the right thereof remain inviolate."); *id.*, art. I, § 9 ("in all criminal prosecutions the accused hath a right to a speedy public trial by an impartial jury of the vicinage . . . nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land."); *see also William Goldman Theatres, Inc. v. Dana*, 405 Pa. 83, 173 A.2d 59, 64 (1961) ("an individual is entitled to a public trial by an impartial jury of the vicinage in every situation in which he would have been entitled to such a trial at the adoption of the Pennsylvania Constitution in 1790 and ever since under succeeding constitutions.").

In support of this claim, appellant cites several decisions involving application of recidivist penalties, which held the fact of the prior conviction must be pled in the indictment, the defendant's identity as the person previously convicted must be established, and the defendant must be afforded notice of the possibility of an increased sentence and the opportunity to be heard.[9]

9. *See Commonwealth v. Moses*, 441 Pa. 145, 271 A.2d 339, 340 (1970) (trial court lacked power to impose increased sentence when indictment did not contain averments of prior convictions); *Commonwealth ex rel. Dermendzin v. Myers*, 397 Pa. 607, 156 A.2d 804, 807 (1959) (defendant may not be sentenced as recidivist without supporting judicial determination of issue, and unless he is notified, prior to sentencing, of issue of recidivism and has had opportunity to be heard); *Commonwealth v. Payne*, 242 Pa. 394, 89 A. 559, 561 (1913) (previous conviction of accused must be averred in indictment and record of conviction must be offered in evidence in support of averment); *Rauch v. Commonwealth*, 78 Pa. 490, 1875 WL 13105, *4 (1875) (court cannot impose increased punishment based upon second misdemeanor conviction unless former conviction is stated in indictment); *Commonwealth v. Herstine*, 264 Pa.Super. 414, 399 A.2d 1118, 1119 (1979) (since second offense carries greater penalty than first offense, it is different in kind and character than first offense, and particular characteristics distinguishing it from first offense must be pled in indictment); *Halderman's Case*, 53 Pa.Super. 554, 1913 WL 4715, *1 (1913) ("To leave to a trial judge to find from evidence not suggested in the record that the party convicted was guilty of the offense to which the greater punishment is attached would deprive the defendant of the right to a trial on a question vitally affecting his liberty and as to which he had a right to be heard."); *Commonwealth v. Stack*, 20 Pa.D. 599, 1910 WL 3240, *2 (Pa.O. & T.) (1910) (clear meaning of discussion in *Rauch* is that

Appellant also relies on *Commonwealth v. Reagan*, 348 Pa.Super. 589, 502 A.2d 702 (1985) (*en banc*), which involved imposition of a mandatory minimum sentence for recidivism under the Drunk Driving Act, 75 Pa.C.S. § 3731(e)(1)(ii). In holding that prior driving under the influence (DUI) convictions are not an essential element of the crime of DUI, and therefore need not be alleged in the information, the Superior Court distinguished the cases cited by appellant, *see* n. 10, *supra*, stating:

> [I]n each of these cases, the recidivist statute under which the defendant was sentenced provided for an increased *maximum* sentence or an "enlarged" sentence, and it was for this reason that the Courts concluded that prior convictions had to be alleged in the Information or Indictment. *The Courts held that the increased maximum sentence, or change in the grade of offense, made a subsequent offense different in kind and character than a first offense.*

*Reagan*, at 705 (emphasis added); *see also Rauch*, at *4 (imprisonment is not lawful consequence of conviction for unlawful sale of liquors; it is lawful consequence of second sale only after former conviction).

Although Pennsylvania courts, historically, have treated prior convictions as elements when those convictions increase the maximum penalty for an offense, appellant overlooks the rationale behind this characterization. The original understanding at common law regarding what constitutes an "element" was broader than that today, due to the fact that each crime, as defined by the legislature, had its own specific punishment; there was no separation of offenses and sentences. *See U.S. v. Gray*, 438 U.S. 41, 45–46, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978) (explaining that, in early days of Republic, when imprisonment had only recently emerged as alternative to death, confinement in public stocks, and whipping, period of incarceration was specifically prescribed by legislature; not until later did fixed system give way to individualized, flexible approach to sentencing, with discretion vested in sentencing

district attorney is required to establish, affirmatively, fact of recidivist's identity unless it is admitted, and it must be put to jury).

court); *see also Apprendi,* at 499–518, 120 S.Ct. 2348 (Thomas, J., concurring) (detailing history of treatment of recidivism as element of offense). *Rauch,* one of the chief cases upon which appellant relies, was decided under such a scenario.

When the General Assembly passed the Crimes Code in 1972, however, common law crimes were abolished; the Code specifically provides no conduct constitutes a crime unless statutorily defined. 18 Pa.C.S. § 107(b). The statute under which appellant was convicted, 35 P.S. § 780–113(a)(30), defines the offense of possession with intent to deliver, but does not mention any sentence enhancement; the recidivist provision pertaining to this offense is instead found separately, in 35 P.S. § 780–115(a). While this Court has never squarely addressed the interplay of these two sections, in *Commonwealth v. Griffin,* 804 A.2d 1 (Pa.Super.2002), the defendant was convicted and sentenced under the same statutes as appellant; he raised the same challenge to § 780–115(a). The Superior Court aptly noted:

> *[N]othing in [§ 780–115(a)] creates a new crime called "possession of a controlled substance with intent to deliver as a second or subsequent offense," nor does it add a new element to the statutory definition of the crime of possession of a controlled substance with intent to deliver.* ...
> Our statutory law defines only one offense pertaining to the possession of a controlled substance with the intent to deliver that substance:
>
>> Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, ... or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.
>
> 35 P.S. § 780–113(a)(30). *When read in pari materia, clearly the language of sections 780–113(a)(30) and 780–115(a) creates no new possessory offense requiring a previous conviction as a substantive element.*

*Griffin,* at 15 (emphasis added). *See also Commonwealth v. Soboleski,* 421 Pa.Super. 311, 617 A.2d 1309, 1312 (1992) (prior

conviction does not alter guilt or innocence of person charged; prior conviction is only relevant to determination of sentence following adjudication of guilt); *Commonwealth v. Lark*, 350 Pa.Super. 558, 504 A.2d 1291, 1297–98 (1986) (holding previous homicide conviction does not become element of murder merely because sentencing enhancement will apply based on previous conviction); *Commonwealth v. Harvin*, 346 Pa.Super. 575, 500 A.2d 98, 100 (1985) (prior offenses used in grading do not constitute substantive element of crime); *Commonwealth v. Coleman*, 289 Pa.Super. 221, 433 A.2d 36, 39 (1981) (noting, in retail theft case, had legislature intended to make grading of offense one of its substantive elements, it would not have divided definition of offense and grading of offense into distinct, separately labeled subsections).

The logic in *Griffin* rings true: the offense of possession with intent to deliver is completely and exclusively defined in § 780–113(a)(30); the recidivist provision of § 780–115(a) is a sentence enhancement, separate from the elements of possession with intent to deliver, and it does not transpose prior convictions for that offense into a substantive element of § 780–113(a)(30). Accordingly, appellant's historical argument fails.

Other jurisdictions which have addressed the issue of recidivist sentencing enhancements have concluded *Apprendi*'s prior conviction exception applies and a prior conviction need not be determined by a jury beyond a reasonable doubt. *See, e.g., Fyler v. State*, 852 So.2d 442 (Fla.Dist.Ct.App.5th Dist.2003) (habitual offender classification based on defendant's prior criminal record does not require jury determination pursuant to holding in *Apprendi* ); *State v. Kendall*, 274 Kan. 1003, 58 P.3d 660 (2002) (use of defendant's two prior DUI convictions to change classification of subsequent DUI conviction from misdemeanor to felony did not violate *Apprendi* ); *State v. Clemons*, 273 Kan. 328, 45 P.3d 384 (2002) (juvenile adjudications are within exception of *Apprendi* for prior convictions and may be used in calculating defendant's criminal history score under Kansas Sentencing Guidelines Act); *State v. Hitt*, 273 Kan. 224, 42 P.3d 732 (2002) (*Apprendi* prior conviction

exception, to requirement that jury must determine any fact increasing penalty for crime beyond statutory maximum, encompasses juvenile adjudications); *State v. Weldele,* 315 Mont. 452, 69 P.3d 1162 (2003) (*Apprendi* did not require that prior DUI convictions be submitted to jury and proven beyond reasonable doubt); *State v. Hurbenca,* 266 Neb. 853, 669 N.W.2d 668 (2003) (fact of prior convictions did not have to be determined by jury for purposes of habitual criminal sentencing; prior convictions must be proven by preponderance of evidence); *State v. LeBaron,* 148 N.H. 226, 808 A.2d 541 (2002) (prior conviction was merely sentencing factor, rather than element of separate felony-level offense of driving after having been certified as habitual offender; defendant's prior convictions need not have been alleged in indictment nor proved to jury beyond reasonable doubt); *State v. Smith,* 150 Wash.2d 135, 75 P.3d 934 (2003) (neither federal nor state constitutions require that prior convictions be proved to a jury beyond a reasonable doubt); *State v. Wheeler,* 145 Wash.2d 116, 34 P.3d 799 (2001) (same); *State ex rel. Appleby v. Recht,* 213 W.Va. 503, 583 S.E.2d 800 (2002) (fact of predicate felonies supporting recidivist enhancement need not be proven to jury beyond reasonable doubt); *State v. Veldt,* 267 Wis.2d 960, 671 N.W.2d 717 (App.2003) (according to *Apprendi,* fact of prior drunk driving conviction does not have to be submitted to jury).[10]

**10.** Other jurisdictions, in applying *Apprendi*'s holding where the fact which increased the maximum penalty was something other than a prior conviction, have also noted *Apprendi*'s prior conviction exception. *See, e.g., Ex Parte Waldrop,* 859 So.2d 1181, 1186 (Ala.2002); *State v. Ring,* 204 Ariz. 534, 65 P.3d 915, 937–38 (2003); *People v. Sengpadychith,* 26 Cal.4th 316, 109 Cal.Rptr.2d 851, 27 P.3d 739, 742 (2001); *State v. Sanko,* 62 Conn.App. 34, 771 A.2d 149, 155 (2001); *State v. Carvalho,* 101 Hawai'i 97, 63 P.3d 405, 410 (2002); *People v. Swift,* 202 Ill.2d 378, 269 Ill.Dec. 495, 781 N.E.2d 292, 294 (2002); *State v. Jacobs,* 644 N.W.2d 695, 698 (Iowa 2001); *State v. Palermo,* 818 So.2d 745, 751 (La.2002); *State v. Burdick,* 782 A.2d 319, 323 (Me.2001); *People v. Mass,* 464 Mich. 615, 635, 628 N.W.2d 540, 552 (2001); *State v. Jones,* 659 N.W.2d 748, 751 (Minn.2003); *State v. Whitfield,* 107 S.W.3d 253, 262 n. 7 (Mo.2003); *Abrego v. State,* 118 Nev. 54, 38 P.3d 868, 870 (2002); *State v. McDonald,* 134 N.M. 486, 79 P.3d 830, 832 (Ct.App.2003); *People v. Walters,* 196 Misc.2d 78, 763 N.Y.S.2d 715, 719 (N.Y.Sup.Ct.2003); *State v. Lucas,* 353 N.C. 568, 548 S.E.2d 712, 730 (2001); *State v. Kelso,* 2000 WL 145684, *2, 2000 Ohio App. LEXIS

Thus, there is ample support for the conclusion that *Apprendi*'s prior conviction exception remains viable.

Appellant further argues, however, that this Court has drawn a distinction between cases where the recidivist statute provides for a mandatory minimum sentence and cases such as his, where the statute increases the maximum sentence. Appellant points to *Commonwealth v. Wright*, 508 Pa. 25, 494 A.2d 354 (1985), and *Commonwealth v. Allen*, 508 Pa. 114, 494 A.2d 1067 (1985), which address the constitutionality of two sections of the Mandatory Minimum Sentencing Act. *See* 42 Pa.C.S. §§ 9712 (requiring imposition of minimum sentence of five years total confinement if defendant visibly possessed firearm during commission of certain felonies) and 9714 (requiring imposition of minimum sentence of five years total confinement if defendant convicted of violent felony has prior state or federal conviction of crime of violence).

In *Wright* and *Allen*, this Court held the sentencing factors of visible possession of a firearm and prior conviction of a violent crime were not elements of offenses, because: 1) the legislature had explicitly stated, in the respective statutes, that the "[p]rovisions of this section shall not be an element of the crime . . .," 42 Pa.C.S. §§ 9712(b), 9714(c); 2) the statutes' factors did not satisfy the Crimes Code's definition of an "element of an offense," *see* 18 Pa.C.S. § 103; [11] 3) the statutes neither altered the degree of guilt of the offenses nor increased the maximum sentences for the offenses; and 4) the statutes "applie[d] only where the defendant is convicted of

4641, *5 (Ohio Ct.App.2000); *State v. Dilts*, 179 Or.App. 238, 39 P.3d 276, 279 (2002); *State v. Simuel*, 357 S.C. 378, 593 S.E.2d 178, 180 (Ct.App.2004); *State v. Holton*, 126 S.W.3d 845, 850 (Tenn.2004); *Ex parte Boyd*, 58 S.W.3d 134, 136 (Tex.Crim.App.2001).

11. An element of an offense is:

Such conduct or such attendant circumstances or such a result of conduct as:

(1) is included in the description of the offense;

(2) establishes the required kind of culpability;

(3) negatives an excuse or justification for such conduct;

(4) negatives a defense under the statute of limitation; or

(5) establishes jurisdiction or venue.

18 Pa.C.S. § 103.

one of the offenses enumerated therein, and thus relates solely to the sentencing proceedings." *Allen*, at 1070–71; *Wright*, at 357.

Appellant emphasizes this Court's observation that neither of the statutes in *Wright* and *Allen* increased the maximum penalty for the offenses; from that, he extrapolates that, in a case where the maximum sentence is increased by a recidivist statute, the prior offense is an element of the crime. To support this supposition, appellant relies on *Commonwealth v. Williams*, 557 Pa. 285, 733 A.2d 593 (1999) ("*Williams I* "), in which this Court held the sexually violent predator provisions of Pennsylvania's Megan's Law, 42 Pa.C.S. §§ 9791–9799.6, were unconstitutional because the determination of whether a defendant is a sexually violent predator is a "separate factual determination, the end result of which is criminal punishment," *Williams I*, at 603, and therefore the requirement that a defendant rebut the presumption he is a sexually violent predator violates due process. *Id.* In so holding, this Court distinguished *Wright*, noting that unlike that case, the sexually violent predator provision "expands the maximum sentence to be imposed for the predicate crimes ... if the offender is found to be a sexually violent predator." *Id.*, at 602.

Appellant overlooks the fact, however, that the statute at issue in this case does not provide for any fact-finding, nor does it make the increased maximum sentence contingent on any factual question that has not already been determined. The fact of a prior conviction stands alone; it does not require a presumption—it either exists as a matter of public record or it does not. *See Allen*, at 1071 ("The existence of a prior conviction is a simple historical fact which may be ascertained through official documents."). The appellant's guilt of the prior offense has already been determined beyond a reasonable doubt, by a jury, if he chose to exercise that right, and is a " 'straightforward issue capable of objective proof' and where 'the risk of error was slight'...." *Commonwealth v. Butler*, 563 Pa. 324, 760 A.2d 384, 388 (2000) (quoting *Williams I*, at 607); *see also Wright*, at 362 (noting that in § 9712 proceeding, risk of error is slight because visible

possession of firearm is "simple, straightforward issue suscep-tible of objective proof .... [and t]here is scant potential that suspicion and conjecture will enter into the factfinder's deci-sion"; further, evidence of visible possession is "amenable to meaningful appellate review.").

 Thus, in cases where the fact which increases the maximum penalty is not a prior conviction and requires a subjective assessment, anything less than proof beyond a reasonable doubt before a jury violates due process. Addi-tionally, any judicial finding which results in punishment be-yond the statutory maximum must be submitted to a jury and proven beyond a reasonable doubt. *See Commonwealth v. Williams*, 574 Pa. 487, 832 A.2d 962 (2003) (*"Williams II"*) (citing *Apprendi*). Where, however, the judicial finding is the fact of a prior conviction, submission to a jury is unnecessary, since the prior conviction is an objective fact that initially was cloaked in all the constitutional safeguards, and is now a matter of public record.[12]

In the present case, although the fact of appellant's prior drug convictions was not required to be pled in the informa-tion charging appellant with PWID, the information notified appellant of the Commonwealth's intent to seek the enhance-ment. Appellant's prior drug convictions appeared in the Quarter Sessions file and presentence report available to the sentencing court. For the reasons expressed in *Williams* and

12. Furthermore, prior convictions are extremely prejudicial to a defen-dant, if admitted into evidence at trial. *See Commonwealth v. Spruill*, 480 Pa. 601, 391 A.2d 1048, 1050–51 (1978) ("Evidence of prior criminal activity ... is probably only equaled by a confession in its prejudicial impact upon a jury...."). In *Commonwealth v. Koczwara*, 397 Pa. 575, 155 A.2d 825 (1959), this Court concluded although the accused must be notified before trial that the Commonwealth intends to seek an enhanced sentence for recidivism, evidence of the prior convic-tions could not be admitted at trial, except for impeachment purposes, in order "to avoid possible prejudice of the defendant by the charge of a former conviction." *Id.*, at 831. *See also Almendarez–Torres*, at 234, 118 S.Ct. 1219 (noting, in response to argument that name and details of prior offense could be redacted for jury, that jurors would still learn of *nature* of offense, *e.g.*, aggravated felony, and that "we do not believe ... Congress would have wanted to create this kind of unfairness in respect to facts that are almost never contested.")

*Butler, supra,* the existence of these convictions was capable of objective proof; there was no need to resubmit them for the jury to determine they were recorded in appellant's file. Accordingly, appellant was properly sentenced under the enhancement in § 780–115(a), and the judgment of sentence is affirmed.

Judgment of sentence affirmed.

Former Chief Justice ZAPPALA did not participate in the decision of this case.

Justice CASTILLE files a concurring opinion.

Justice SAYLOR files a concurring opinion.

Justice CASTILLE, Concurring.

I join the Majority Opinion with the sole exception of footnote one, which rejects the Commonwealth's claim that appellant waived his constitutional challenge to the statutory sentencing enhancement found at 35 Pa.C.S. § 780–115(a) because, *inter alia,* he never raised it before the trial court.[1] The Majority holds that appellant's belated challenge implicates the legality of his sentence and concludes that, as such, it is non-waivable. Although I am satisfied to reach the merits of the claim under the unique circumstances presented here, I conclude that the issue is reviewable for much narrower reasons than those offered by the Majority.

Generally speaking, "[a]n illegal sentence is one that exceeds the statutory limits. *Commonwealth v. Bradley,* 575 Pa. 141, 834 A.2d 1127, 1131 (2003) *(quoting Commonwealth v. Hunter,* 768 A.2d 1136, 1144 n. 3 (Pa.Super.2001)) (further citation omitted); *Commonwealth v. Vasquez,* 560 Pa. 381, 744 A.2d 1280, 1284 (2000) (citation omitted); *Commonwealth v. Miller,* 541 Pa. 531, 664 A.2d 1310, 1325 (1995); *Commonwealth v. Piper,* 458 Pa. 307, 328 A.2d 845, 847 (1974). Alleged errors in the imposition of a sentence that falls within

1. Appellant concedes that his claim is waived since he first raised it in the Superior Court, despite the fact that it ripened in the trial court upon imposition of sentence.

the authorized statutory range of punishment, as this one unquestionably does, do not implicate the "legality" of that sentence. Indeed, appellant does not dispute that the statute at issue authorizes the sentence he received; instead, he complains that the decision-making authority reposed in the enhancement statute is directed at the court rather than a jury. Such a claim should presumptively be deemed waivable.

But the matter is not so simple. One complicating factor is that here, as in the *Bradley* case, it could be said that "if appellants claim proved to have merit, it would implicate the legality of his sentence" under the classic formulation of sentence illegality. 834 A.2d at 1131. This is so because if appellants claim that the procedure by which he was subjected to the enhanced sentence authorized by Section 780–115(a) was constitutionally deficient proved to have merit, then appellants sentence would exceed the lawful statutory maximum **otherwise** imposable for his offense. But, before concluding that *Bradley* makes appellants waived claim reviewable, it bears emphasis that *Bradley* involved a **preserved** claim. The question of sentencing "legality" in *Bradley* arose only in conjunction with the jurisdictional distinction in appellate review models set forth in the Sentencing Code.[2] *Bradley* did not purport to address and answer what it might mean to say that a claim implicates the "legality" of a sentence for other purposes—such as attempts to defeat jurisprudential principles of issue preservation and waiver, or to establish jurisdiction where it does not otherwise exist, or to defeat restrictions upon collateral attack, or to defeat the restrictions upon retroactive application of new procedural rulings of constitutional dimension. Nevertheless, since *Bradley* employed the classic "exceeds the statutory limit" formulation in a context where the assumed success of the claim was the only basis upon which the claim could be said to implicate sentencing "legality," it provides at least some support for the notion that

2. Under the Sentencing Code construct at issue in *Bradley*, "[t]he defendant or the Commonwealth may appeal as of right the legality of the sentence," 42 Pa.C.S. § 9781(a), but cannot secure review of a discretionary aspect of sentencing without first petitioning for allowance of appeal of the issue. *Id.* § 9781(b).

the claim *sub judice,* if deemed meritorious, likewise could be said to implicate the "legality" of appellants sentence.

I have serious reservations concerning the prospect of employing a form of relaxed waiver to absolve a criminal defendant of the requirement of preserving a novel sentencing challenge in the trial court based upon the assumption that, if the claim proved to have merit and the statute under which the defendant was sentenced were suspended, the sentence would exceed the residual statutory maximum. Appellants sentence unquestionably is lawful upon its face, given the existing statutory construct; his claim, in essence, seeks to alter that construct. In short, appellant would belatedly like his to be the test case which would result in striking the statute down on constitutional grounds. In this regard, the posture of this appeal is significantly different from that at issue in *Commonwealth v. Wynn,* 567 Pa. 183, 786 A.2d 202 (2001) (*per curiam*), the case cited by the Majority to support its holding that appellants sentencing challenge is unwaivable. This Courts *per curiam* reversal in *Wynn* merely afforded that defendant the benefit of this Courts **existing** holding in *Commonwealth v. Butler,* 563 Pa. 324, 760 A.2d 384 (2000), that the "two strikes" legislation under which Wynn was sentenced was unconstitutional. The Court did not overlook Wynns waiver in order to innovate or announce a holding that a statute was unconstitutional, as appellant would have this Court do; that innovation had been secured by the defendant in *Butler,* and the *per curiam* order in *Wynn* declined to enforce the waiver so as to prevent service of an unconstitutional sentence.

A second complicating factor here is the existing uncertainty in the law over the significance that a waived sentencing claim has a constitutional dimension. This is a question which the Court did not address or decide despite its square presentation in *Wynn: i.e.,* whether a constitutional challenge to a sentencing statute could or should be deemed non-waivable given this Courts precedent holding that sentencing "legality" claims are confined to sentences which exceed the authorized statutory maximum. *See Wynn,* 786 A.2d at 202 (Saylor, J.

dissenting).[3] Indeed, it was the failure to decide this question which provoked Mr. Justice Saylor to dissent in *Wynn,* as he argued that the Court "would be best served by issuing a written opinion to address the apparent inconsistency between its disposition of this case and prevailing precedent." *Id.*

In deeming waiver to be inapplicable in the case *sub judice,* the Majority extrapolates from the *per curiam* decision in *Wynn* a broad general proposition that constitutional challenges to a sentence cannot be waived. I disagree with such a far-reaching rule. Pennsylvania courts have held on numerous occasions that constitutional challenges to a sentence are waived if not properly raised below. *See generally Commonwealth v. Hartz,* 367 Pa.Super. 267, 532 A.2d 1139, 1143–45 (1987) (*en banc*) (Cirillo, P.J., concurring) (collecting cases). Moreover, many fairly routine sentencing claims have a direct or tangential constitutional dimension. To hold that a mere allegation of unconstitutionality renders the claim impervious to waiver would be absurd. There is no reason to afford garden variety, or novel, sentencing claims of constitutional dimension a status which is denied to equivalent constitutional claims affecting the trial itself.

I nevertheless recognize that the contours of Pennsylvania's "illegal sentence" doctrine is uncertain; that *Wynn* exacerbated the situation, particularly with respect to claims involving constitutional challenges to sentences falling within the authorized statutory range; and that it is an issue which this Court should address in an appropriate case. Moreover, recent experience teaches that the issue should be treated in a less monolithic fashion than our brief discussions over the years may have suggested. As I have noted above, a claim that a sentence is "illegal" may be offered for a variety of reasons: to negate an abject waiver on direct appeal, as here; to secure substantive appellate review of a preserved claim in light of statutory restrictions, as in *Bradley;* as a basis for creating a

---

3. Wynn's two strikes sentence of ten to twenty years' imprisonment for felony aggravated assault did not exceed the statutory maximum for that offense. Felonies of the first degree are punishable by up to twenty years of imprisonment.

form of extraordinary jurisdiction *nunc pro tunc, see Fajohn v. Commonwealth,* 547 Pa. 649, 692 A.2d 1067 (1997); and, I would expect, both to defeat limitations upon the retroactive application of new procedural rules and to secure belated collateral review of a sentence in the face of the statutory restrictions imposed by the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. 9541 *et seq.* Should this Courts construction of the term "illegal sentence" be so broad as to permit a party such as appellant to seek to innovate a new constitutional rule of procedure, where normative principles of issue preservation and retroactivity ordinarily would prevent such an innovation? Should that construction apply only to those seeking the benefit of an existing law or interpretation which calls into question the lawfulness of their sentences (as in the case of the appellant in *Wynn* who sought application of the *Butler* decision), as opposed to one seeking to make that very law? Should the definition of what is an "illegal" sentence for purposes of avoiding a judicial issue preservation doctrine factor in the reality that the Court would essentially be permitting the defendant to mount a preemptive collateral attack, and thereby to avoid satisfying statutory limitations upon collateral attack as well as salutary limitations upon the retroactive effect of new constitutional rulings? Merely labeling a sentence as "illegal" hardly justifies defeating all other laws which exist to ensure a rational and fair system of review.

In this regard, it is important to recognize that the type of innovative constitutional ruling appellant seeks to secure here—*i.e.,* a ruling that Section 780–115(a) is unconstitutional because it permits a judge instead of a jury to determine the factors which authorize the increase in sentence in supposed violation of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002)—has been deemed by the U.S. Supreme Court to be one which involves a mere procedural question which is not properly subject to retroactive application. *See Schriro v. Summerlin,* —— U.S. ——, 124 S.Ct. 2519, 2523, 159 L.Ed.2d 442 (2004)(2004) ("Rules that allocate decisionmaking authority in this fashion are prototypi-

cal procedural rules," and not substantive rules subject to retroactive application). For practical purposes, this means that such a constitutional claim is subject to waiver; and indeed, this Court has already treated *Apprendi*-based claims as waivable. *See Commonwealth v. Bavusa*, 574 Pa. 620, 832 A.2d 1042, 1051 (2003) ("If appellant had a constitutional objection to the statute premised upon the concerns that led to the view embraced by the 5–4 majority in *Apprendi*, he was obliged to specifically forward it below."). Accordingly, even if the constitutional challenge to the statute forwarded in this case were someday deemed meritorious, the only defendants who should properly be entitled to the benefit of that ruling would be those who raised and preserved the question at all appropriate stages of the litigation. *E.g. Commonwealth v. Freeman*, 573 Pa. 532, 827 A.2d 385, 395 (2003). By his own admission, appellant is not one of those people. This fact should weigh heavily against holding that an innovative but waived claim such as the one appellant forwards implicates the current "legality" of his sentence for purposes of defeating requirements of issue preservation and limitations upon the retroactive effect of new procedural rulings.

Logically, the question of when a sentencing claim should be deemed to be of such fundamental importance as to defeat existing procedural defaults should depend upon a balance of the specific nature of the claim forwarded and the specific statute, rule or judicial default doctrine which would be negated by judicial consideration of the claim. I would flatly reject the blanket notion that if a sentencing claim is deemed to implicate "legality," it necessarily suspends all countervailing considerations. I would reserve that sort of status to those few sentencing claims which fall within the traditional realm of what may be called the "illegal": *i.e.*, those which challenge sentences exceeding the very jurisdiction or power of the sentencing court, such as a twenty-year sentence for an offense which is punishable by a maximum of ten years, or separate sentences on offenses which merge. Appellants claim that his sentence, which falls within the durational parameters of the statute under which he was sentenced, is

infirm because the statute suffers from some constitutional deficiency (such as the allocation of decision-making authority) is not nearly of the same magnitude as a claim that the courts sentence exceeded the very authority granted it by the General Assembly.

I am strongly inclined to view the instant claim as waived and therefore available to appellant, if at all, only under the auspices of the PCRA. Nevertheless, I am satisfied to reach the question for the following reasons. First, as noted above, the procedural question of exactly what sorts of issues should be deemed to implicate the "non-waivable" "legality" of a sentence is unclear under Pennsylvania precedent and was made even more unclear by *Wynn;* indeed, the procedural question may be more difficult than the substantive issue accepted for review here. Second, although the parties have briefed the question of waiver, this Court did not focus upon that question in the allocatur grant and the generalities argued by the parties understandably do not address the complexities outlined above. A definitive holding on the question should perhaps await a case where the broader issue has been joined. Third, in the absence of comprehensive and definitive guidance, *Bradley* and *Wynn* provide some arguable, albeit weak and indirect, support for reviewing the merits of the claim. Finally, although entertaining the defaulted claim may have the corollary effect of subverting the role of the PCRA, the direct appeal "waiver" existing at this point derives from this Court's jurisprudential doctrines, over which we have more legitimate discretionary control than a statutorily-created waiver. On balance, although I do not believe that appellant is **entitled** to review as a matter of right, I believe it is a proper exercise of judicial discretion to hear the claim on the merits.

On those merits, as noted at the outset, I join the Majority Opinion.[4]

4. In joining the Majority's substantive analysis, I emphasize, as the Majority does, that this statute permits an increase in the maximum penalty available. Accordingly, the analysis in *Commonwealth v. Bavu-*

Justice SAYLOR, Concurring.

With regard to the issue of waiver discussed in footnote one of the majority opinion, I noted my concerns in *Commonwealth v. Wynn,* 567 Pa. 183, 184–85, 786 A.2d 202, 202 (Pa.2001) (Saylor, J., dissenting), which the majority does not undertake to resolve here. On the merits of the constitutional issue, I concur in the result reached by the majority, and with its analysis of Appellant's federal claim. For the following reasons, however, I am unable to join its reasoning pertaining to Appellant's claim under the Pennsylvania Constitution.

Initially, the majority rejects Appellant's state constitutional argument by stating that the common law only treated recidivism as an element of the crime due to the determinate sentencing scheme in force in the early days of the Commonwealth, and thus, such historical treatment should not be understood as reflecting a precept that a prior conviction is an offense element in a broader sense so as to implicate the jury trial right. *See* Majority Opinion, (*"Majority Op."*) at 258–59, 855 A.2d at 808. Later, in distinguishing *Commonwealth v. Williams,* 557 Pa. 285, 733 A.2d 593 (1999), the majority asserts that the statute challenged here does not impose any impermissible presumption that a defendant is a recidivist because the finding of recidivist status can never be contingent upon any disputed issue of fact. *See Majority Op.* at 263–64, 855 A.2d at 811. If true, this alone would provide a sufficient basis to reject summarily any contention that Appellant is entitled to have a jury decide the question of recidivism. *See generally Blum v. Merrell Dow Pharmaceuticals,* 534 Pa. 97, 113, 626 A.2d 537, 545 (1993) (noting that the state constitutional jury trial right signifies that "a jury shall continue to be the tribunal for the determination of all questions of fact" (quoting *Commonwealth v. Collins,* 268 Pa. 295, 299, 110 A. 738, 738–39 (1920))). However, the fact of a prior conviction, while perhaps easily determined in many instances, must still be determined; it is not self-proving. As apparently acknowledged by the majority, there may be disputed ques-

sa, supra, *which involved a statute which allowed for the sentencer to* **downgrade** *the offense upon proof at sentencing, is not at issue.*

tions of identity, *see Majority Op.* at 257–58 n. 9, 855 A.2d at 807 n. 9,[1] as well as issues surrounding the accuracy of any documentation that the Commonwealth proffers as proof of an alleged prior conviction, or that the offense was "similar" for purposes of Section 780–115(a)—particularly if it occurred in an out-of-state or federal forum. The Legislature recognized many of these principles when it enacted Pennsylvania's general recidivist statute, which states:

> The sentencing court, prior to imposing sentence on an offender under subsection (a), shall have a complete record of the previous convictions of the offender, copies of which shall be furnished to the offender. If the offender or the attorney for the Commonwealth contests the accuracy of the record, the court shall schedule a hearing and direct the offender and the attorney for the Commonwealth to submit evidence regarding the previous convictions of the offender. The court shall then determine, by a preponderance of the evidence, the previous convictions of the offender and, if this section is applicable, shall impose sentence in accordance with this section....

42 Pa.C.S. § 9714(d). Therefore, contrary to the majority's implication, the existence of a relevant prior conviction may involve disputed factual issues and must be established on the record. Concomitantly, principles of due process mandate that the Commonwealth bear the burden of proof. *See Commonwealth v. Butler,* 563 Pa. 324, 333, 760 A.2d 384, 389 (2000); *Williams,* 557 Pa. at 312, 733 A.2d at 607–08.

1. In footnote nine, the majority cites to *Commonwealth v. Stack,* 20 Pa. D. 599, 1910 WL 3240 (Pa.O. & T.1910), which contains the following relevant discussion:

> Identity of name often furnishes a presumption of identity of person, until denied, in civil cases, upon which judicial action may be taken; and in *State v. McGuire,* 87 Mo. 642, the burden of disproof was put upon the defendant in the indictment when the record of his former conviction was produced. But the great weight of authority is otherwise in criminal prosecutions, and the clear meaning of the discussion in *Ranch [sic] v. Com.,* 78 Pa. 490, and *Kane v. Com.,* 109 Pa. 541, is that the district-attorney is required, unless it be admitted, to establish affirmatively this fact of identity, and it must be put to the jury.

*Id.* at *2. The matter may also be complicated where the defendant has used aliases or has changed his or her name. *E.g., Graham v. West Virginia,* 224 U.S. 616, 620–21, 32 S.Ct. 583, 584, 56 L.Ed. 917 (1912).

**274**

Furthermore, I do not find the relative labeling and statutory placement of the underlying offense and sentencing enhancement to support the conclusion that state constitutional right does not extend to the latter. *See Majority Op.* at 258–61, 855 A.2d at 808–09 (quoting *Commonwealth v. Griffin*, 804 A.2d 1, 15 (Pa.Super.2002)). While these factors may illuminate legislative intent, they cannot properly be given a constitutional dimension, as the constitutional inquiry "is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Apprendi v. New Jersey*, 530 U.S. 466, 494, 120 S.Ct. 2348, 2365, 147 L.Ed.2d 435 (2000); *see also id.* at 496, 120 S.Ct. at 2366 ("[T]he mere presence of th[e sentencing] 'enhancement' in a sentencing statute does not define its character.").[2] Likewise, the constitutionally-mandated minimum standard of proof that the government must satisfy in order to impose constraints upon an individual's liberty interests beyond those that flow solely from the criminal conviction is ascertained by reference, *inter alia*, to the nature of the affected liberty interests and the manner in which they are constrained, *see Commonwealth v. Maldonado*, 576 Pa. 101, 109, 838 A.2d 710, 714–15 (2003), rather than to the statutory placement and labeling of the provisions through which the additional constraints are imposed. Indeed, we ought particularly to guard against resort to formal considerations where, as here, additional prison time rests in the balance. *Cf. id.*, 838 A.2d at 715 (recognizing that the beyond-

**2.** *See also Ring v. Arizona*, 536 U.S. 584, 602, 122 S.Ct. 2428, 2439, 153 L.Ed.2d 556 (2002) (stating that, no matter how a state chooses to label a particular fact, if an increase in punishment is contingent upon the finding of such fact, it must generally be found by a jury beyond a reasonable doubt); *Blakely v. Washington*, —— U.S. ——, ——, 124 S.Ct. 2531, 2539, 159 L.Ed.2d 403, —— (2004) (rejecting the position that a state can avoid the jury trial requirement through creative labeling of offense elements). While these pronouncements were made in the context of challenges based upon the jury trial right contained in the United States Constitution, they must also be applied to the same right as guaranteed by the Pennsylvania Constitution, for otherwise the General Assembly could substantially restrict its scope through drafting. *Cf. Commonwealth v. Sell*, 504 Pa. 46, 63, 470 A.2d 457, 466 (1983) (observing that federal constitutional guarantees are equally applicable to the analogous state constitutional provision).

a-reasonable-doubt standard of proof is appropriate in criminal cases due to the gravity of the private interests affected and the severe societal loss that occurs when an individual is erroneously subject to criminal punishment).

More convincing, in my view, is the majority's reasoning concerning the nature of an element of a criminal offense. In particular, the majority correctly points out that a previous conviction is qualitatively different from an offense element because the latter pertains to the commission of the crime itself, whereas any prior conviction was entered in a proceeding where the defendant had the right to a jury trial and to require proof of guilt beyond a reasonable doubt. *See Majority Op.* at 253–56, 855 A.2d at 805–06 (quoting *Apprendi,* 530 U.S. at 496, 120 S.Ct. at 2366). Although these observations appear in the portion of the majority opinion dealing with Appellant's federal claim, the same considerations logically apply to his contention advanced under the state charter. It is on this basis that I agree with the outcome reached by the majority, namely, that the challenged sentence enhancement does not implicate the right to a trial by jury as guaranteed by the Pennsylvania Constitution.