J-S23022-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TORREY LEE THOMPSON | : | |
| | : | |
| Appellant | : | No. 2606 EDA 2022 |

Appeal from the Judgment of Sentence Entered September 12, 2022
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0002121-2020

BEFORE: STABILE, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KING, J.:                    **FILED AUGUST 19, 2024**

Appellant, Torrey Lee Thompson, appeals from the judgment of sentence entered in the Montgomery County Court of Common Pleas, following his jury trial convictions for robbery, conspiracy, theft by unlawful taking, and criminal use of a communication facility.[1]  We affirm.

The trial court set forth the relevant facts and procedural history of this case as follows:

> Just after 7:00 p.m. on Friday, October 25, 2019, a woman dressed in a purple and black hijab and Muslim attire exited a blue Mercury Mountaineer SUV with after-market rims on Cheltenham Avenue, walked across a parking lot, and entered the CVS Store at 45 Cheltenham Avenue in Cheltenham Township, Montgomery County.  For approximately [one hour and forty] minutes, this woman

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3701(a)(1)(ii), 903, 3921(a), and 7512(a), respectively.

walked around inside, as well as in and out, of the store, asking questions of the [19-year-old] cashier, Ayonne Sledge, and the [20-year-old] supervisor, Zakiya Nubutare. When she was not speaking directly with the two CVS employees, the woman was on her cell phone. During this time, the Mercury Mountaineer circled the blocks around the CVS Store approximately three (3) or four (4) times, stopping occasionally in various store parking lots in the shopping center before continuing to circle.

At around 8:40 p.m., the woman in the Muslim attire walked out of the store for the last time and, shortly thereafter, Ms. Nubutare went outside to close the gate in front of the store and start the store closing process. When Ms. Nubutare re-entered the store, she saw another person dressed in a female Muslim headdress and attire inside. Thinking this was a frequent customer, she asked how she could assist the person. Ms. Nubutare then realized that it was not the regular customer but, rather, a black male, strong, husky, over 200 pounds, and approximately [six] feet tall. He motioned as if he had a gun and told her to take him to the office and to give them the money. Ms. Sledge believed the man had a weapon and she was afraid.

Ms. Nubutare led that first man up the stairs to the office and the store safe, as he had instructed. She also believed the man could have a gun on him. The second man walked in shortly after the first, and Ms. Sledge and Ms. Nubutare described him as a black male, approximately 5' 9", shorter than suspect number 1, and wearing a gray hoodie tied up to his nose and covering his face. Ms. Sledge explained that suspect number 2 walked right up to them, like he knew why he was there and what to do. Ms. Nubutare noticed the second man when he appeared in the office with a bag and both men instructed her to put everything in the bag. At one point after Ms. Nubutare had opened the door to the office, she felt something pointed up against her mid-lower back that did not feel like a gun or a finger, but she believed that she and other co-workers in the store were at risk or in danger. After Ms. Nubutare finished loading the bag with the cash from the safe, the men told her to count to 50 and not to call the police as they were leaving. The CVS employees quickly called the police, and an officer arrived within five (5) minutes. Neither woman was able to get a

good look at the men's faces, as only their eyes, part of their nose, and some skin around their eyes were visible because of their clothing.

After receiving a report of an armed robbery, Patrol Officer Timothy Filoon of the Cheltenham Township Police Department arrived at the CVS Store at around 8:50 p.m. on October 25, 2019, and was met by two female employees who were visibly shaken, and a male pharmacist. In speaking with the employees, Officer Filoon learned that the two men had taken approximately $3,304 in cash and that there was store surveillance video. Officer Filoon proceeded to the CVS Store office and reviewed the video off of the security surveillance system. While reviewing the video, Officer Filoon simultaneously radioed through Montgomery County Dispatch to give other officers a description of the two…men and what they were wearing. The Officer described the first suspect as a black male, unknown age, approximately 5 feet, 10 inches to 6 feet tall, medium to larger build and wearing a Muslim-style head covering that covered all but his eyes, and a long black Muslim-style dress that went to his ankles, a green, long cardigan that went to his knees, and white, Nike sneakers. Officer Filoon described the second suspect as a black male, unknown age, approximately 5' 8" to 5' 9" in height, medium build, slightly smaller than suspect number one and wearing a gray-and-black hooded sweatshirt with black drawstrings and a Batman logo. This second suspect had pulled the hood over his face really tight, with a black cap rim sticking out from under the hood. His hands were covered for the most part with the sweatshirt sleeves and he was wearing light-colored pants and dark boots or shoes.

While reviewing the surveillance video of inside the CVS Store office, Officer Filoon could see that, among other things, suspect number 1 in the Muslim attire had a greeting card in his hand. Officer Filoon also contacted others, including the property manager, to inquire about the potential of other surveillance video of the outside from other stores in the shopping center. Officer Filoon learned not only that other stores should have video but also that a GPS tracking device was in the cash taken from the CVS by the suspects, and that the device was active and tracking into Philadelphia. The Officer learned that the device

- 3 -

tracked to the 5600 block of Appletree Street in Philadelphia and that uniformed Philadelphia police officers had responded to that location when the tracker stopped moving. Officer Filoon then drove to the 5600 block of Appletree Street to focus his attention on a blue Mercury Mountaineer SUV with after-market rims.

Philadelphia Police Officer Terrelle Greene and his partner received the information that the GPS tracker was pinging around 5643 and 5645 Appletree Street. Upon arrival at around 9:50 p.m., Officer Greene got out of his unmarked police vehicle and, while walking down the street, placed his hand on the hood of each car that was parked on the block. The Officer found only two…vehicles that were still warm to the touch. The first was occupied by a man in a FedEx uniform who had just returned home from work. The second was the blue Mercury Mountaineer. Officer Greene, and other Philadelphia police officers, watched the vehicle for a couple of hours and spoke with anyone they encountered on the street or on their porch to try to identify its owner, to no avail. Eventually, Officer Greene received the flash information sent by Officer Filoon regarding the clothing the two…robbers were wearing. Using his flashlight to look inside the Mountaineer, Officer Greene saw the distinctive Batman hooded sweatshirt.

Once Officer Filoon arrived on Appletree Street at approximately 3:00 a.m. on October 26, 2019, he took photographs of the street and the Mountaineer parked in front of a rowhouse at 5658 Appletree Street. After shining a flashlight into the vehicle, the Officer could see several items that were very similar to items he saw on the surveillance video at the CVS Store. These items included a gray and black hooded sweatshirt with black drawstrings and a Batman logo, a pair of white Nike sneakers, a pair of dark boots or shoes, a black Adidas baseball-style cap, black fabric that appeared consistent with a Muslim style dress, and the corner of a greeting card. Officer Filoon escorted the vehicle being transported by Flourtown Sunoco Towing from Appletree Street to the Cheltenham Township Police Impound lot.

Cheltenham Township Police Department officers worked diligently with the Pennsylvania State Police and the

Montgomery County Detective Bureau to investigate this robbery. Subsequent fingerprint and DNA analysis tied Appellant and co-defendant Dante Salley to the Mercury Mountaineer as well as to various objects inside of the vehicle. Once law enforcement identified one of the fingerprints as belonging to Appellant, officers learned Appellant's address was 5645 Appletree Street, less than one hundred (100) feet across the street from where the Mountaineer was found parked approximately an hour after the robbery. In addition to the CVS Store GPS tracker detailing the route the vehicle containing the cash took from the Store to the 5600 block of Appletree Street in West Philadelphia, subsequent cell phone and tower analysis placed cell phones owned or utilized by the co-defendants in the vicinity of the CVS Store before the robbery. Law enforcement officers were also able to link phone calls made during this time between Appellant's cell phone and the female in Muslim attire inside of the CVS Store leading up to the robbery.

As lead investigator, Cheltenham Township Police Department Detective Matthew Gonglik learned that Appellant had been arrested on another matter in December of 2019 and was currently incarcerated at the Montgomery County Correctional Facility. Detective Gonglik filed a criminal complaint with an affidavit of probable cause against Appellant on March 5, 2020.

(Trial Court Opinion, filed 6/20/23, at 1-8) (internal citations and quotation marks omitted).

Trial commenced on May 31, 2022. At the conclusion of the trial, the jury convicted Appellant of the aforementioned offenses. On September 12, 2022, the court sentenced Appellant to an aggregate term of 12½ to 25 years of incarceration, which included a mandatory minimum under Section 42 Pa.C.S.A. § 9714(a)(1), based on Appellant's prior conviction for a crime of violence.

Appellant timely filed a notice of appeal on October 10, 2022. The trial

court subsequently ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Following several motions for extension of time, which the trial court granted, Appellant timely filed his concise statement on January 23, 2023. On June 21, 2023, the trial court appointed conflict counsel for Appellant. Appellant subsequently filed an application for remand and additional time to review the record, which this Court granted on August 2, 2023.

On September 25, 2023, Appellant filed a petition to file post-sentence motions *nunc pro tunc* along with proposed post-sentence motions *nunc pro tunc*. The trial court granted the petition and, on November 13, 2023, heard argument on the post-sentence motions. The trial court denied relief on December 13, 2023. On December 18, 2023, the court directed Appellant to file a supplemental concise statement, which Appellant filed on December 21, 2023.

Appellant raises the following issues for our review:

> 1. Did the trial court err in finding sufficient evidence existed to establish Appellant's identity to convict him of robbery, criminal conspiracy, theft, and criminal use of a communication facility?
>
> 2. Did the trial court err in imposing the mandatory minimum sentence of 10-20 years of incarceration where the record lacked any evidence of a prior conviction for a crime of violence, as defined in 42 Pa.C.S.A. § 9714?
>
> 3. Did the trial court err in imposing a mandatory sentence pursuant to 42 Pa.C.S.A. § 9714 where that statute requires only proof of a prior conviction by a preponderance of the evidence, violating Appellant's due process rights under

Article I, Section 9 of the Pennsylvania Constitution and the 14th Amendment of the United States Constitution?

(Appellant's Brief at 6).

In Appellant's first issue, he asserts that the Commonwealth failed to present sufficient evidence of his identity. According to Appellant, the evidence was tenuous and included only DNA evidence from a water bottle intermingled with trash in a car and a fingerprint on the outside of the car, neither of which established when Appellant had driven the vehicle. Appellant contends that the Commonwealth failed to present evidence that Appellant had operated the vehicle close in time to the robbery, or evidence that tied him to any of the clothing related to the robbery. Appellant concludes the evidence was insufficient to convict him, and this Court must grant relief. We disagree.[2]

Appellate review of a challenge to the sufficiency of the evidence is governed by the following principles:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence

_____

[2] The trial court suggests that Appellant has waived his sufficiency claim due to his failure to specify the convictions, as well as the element or elements of the convictions upon which the evidence was insufficient, in his Rule 1925(b) statement. (**See** Trial Court Opinion at 19-20). While Appellant's Rule 1925(b) statement does not identify specific elements of each crime which he seeks to challenge, Appellant's argument is premised on the Commonwealth's alleged failure to prove his identity as the perpetrator of all crimes at issue. Therefore, we decline to find waiver on this basis.

and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super. 2005) (quoting

*Commonwealth v. Bullick*, 830 A.2d 998, 1000 (Pa.Super. 2003)). This

Court has further explained:

[E]vidence of identification need not be positive and certain to sustain a conviction. Although common items of clothing and general physical characteristics are usually insufficient to support a conviction, such evidence can be used as other circumstances to establish the identity of a perpetrator. … Given additional evidentiary circumstances, any indefiniteness and uncertainty in the identification testimony goes to its weight.

*Commonwealth v. Orr*, 38 A.3d 868, 874 (Pa.Super. 2011) (*en banc*),

*appeal denied*, 617 Pa. 637, 54 A.3d 348 (2012) (internal citations omitted).

Here, the trial court summarized the evidence supporting Appellant's

convictions as follows:

Instantly, the defense relied heavily upon the lack of any solid identification evidence of the co-defendants as the perpetrators of this robbery of the CVS Store on Cheltenham Avenue. Because Appellant and his codefendant had hid their faces well, neither victim could provide a positive I.D.

of either suspect. Attorney McMahon also cast doubt on Laron Sims' identification of Appellant as the buyer of his Mercury Mountaineer almost four (4) years earlier, noting that Mr. Sims was twenty (20) percent uncertain. However, the Commonwealth presented a substantial amount of circumstantial evidence that Appellant was the first man who walked into the CVS Store at 45 Cheltenham Avenue just before closing, walked down the greeting card aisle, motioned as if he had a weapon, and directed the young and frightened supervisor and cashier up the stairs into the office and told Ms. Nubutare to put the money from the safe into the bag supplied by co-defendant Salley.

Viewed in the light most favorable to the Commonwealth, the evidence and all reasonable inferences therefrom establish that a female dressed in Muslim attire stepped out of a blue Mercury Mountaineer with after-market rims just after 7:00 p.m. on Friday, October 25, 2019, and entered the CVS Store at 45 Cheltenham Avenue in Cheltenham Township. The Mountaineer is seen on shopping center surveillance video circling the CVS Store three or four times over the next hour and forty minutes with a phone number belonging to Appellant on·a call with the female inside the CVS Store for approximately an hour and twenty-six minutes of that time. Both Appellant's cell phone and that of his two accomplices pinged off of a cell phone tower within a mile from the CVS Store several times prior to the robbery. With just over ten minutes before the store was scheduled to close, the female leaves and two men with their faces covered enter the store.

Appellant matched the general description provided by the two CVS employees and confirmed on store video of the larger of the two men dressed in female Muslim attire and wearing white Nike sneakers who entered first and told the supervisor to take them to the office and give them the money, motioning with his hand like he had a weapon. Appellant was also seen holding a greeting card which is identical to the one later found in the Mountaineer along with clothing that matched what the robbers wore in the CVS Store. Both men went with the store supervisor and cashier into the office and demanded the money from the safe. Ms. Sledge testified about her belief that Appellant had a weapon and that she was afraid. She also testified

about the concerted effort of the pair in carrying out the robbery. Appellant poked the supervisor in the back with something as he was instructing her to open the safe. Ms. Nubutare testified about the fear she felt and belief she held that she and her coworkers were in danger. Co-defendant Salley produced the bag into which the two men both ordered the supervisor to fill with the cash. The two men left the store together and a GPS tracker tracked the CVS Store cash to the 5600 block of Appletree Street in Philadelphia.

Detective Gonglik later lifted Appellant's latent fingerprint as well as that of co-defendant Salley off of the Mountaineer, which was parked less than 100 feet from Appellant's residence an hour after the robbery and tracked there directly from the CVS Store. Law enforcement tied both Appellant's and co-defendant Salley's DNA to items inside the Mercury Mountaineer as well.

Finally, with eighty percent certainty, the former owner of the Mountaineer identified Appellant as the person to whom he sold the vehicle in 2018. Although Attorney McMahon strenuously attacked the lack of direct evidence, including a positive identification of his client, the jury was free to consider all of the circumstantial evidence together and not in isolated fragments.

(Trial Court Opinion at 24-27). Viewed in the light most favorable to the Commonwealth as verdict-winner, the evidence was sufficient to identify Appellant as the perpetrator. **See Jones, supra**. Any indefiniteness and uncertainty in the identification testimony is more properly a challenge to the weight of the evidence, not its sufficiency. **See Orr, supra**. Therefore, Appellant's first issue on appeal merits no relief.

Appellant's remaining issues implicate his mandatory minimum sentence and are, therefore, interrelated. First, Appellant asserts that the trial court erred in imposing a mandatory minimum sentence of 10 years of

incarceration, where the record lacked evidence of a prior conviction for a crime of violence as defined in 42 Pa.C.S.A. § 9714. According to Appellant, the Commonwealth is required to present evidence of Appellant's prior conviction in the form of a "certified" conviction, unless Appellant stipulates to the prior conviction. Although the prior conviction was included in the presentence investigation ("PSI") report, Appellant argues that the PSI report does not constitute evidence of the prior conviction. Appellant claims it was the Commonwealth's burden to offer evidence of the prior conviction, and a PSI report mentioning the prior conviction is insufficient as the PSI report is authored by a non-party entity and lacks the safeguards of cross-examination.

Second, Appellant asserts that imposition of the mandatory minimum sentence in this case is illegal because the relevant mandatory minimum statute requires proof of a prior conviction by only a preponderance of the evidence, in violation of Appellant's due process rights under the Pennsylvania and United States Constitutions. Citing **Alleyne v. United States**, 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), Appellant argues that any fact triggering a mandatory minimum sentence becomes an element of the offense and creates a distinct crime, which must be found beyond a reasonable doubt by the fact-finder at trial. Appellant concludes that imposition of the mandatory minimum sentence was illegal, and this Court must vacate and remand for resentencing. We disagree.

"A challenge to the legality of sentence is a question of law; our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v.**

*Hayes*, 266 A.3d 679, 683 (Pa.Super. 2021).

> A claim that implicates the fundamental legal authority of the court to impose a particular sentence constitutes a challenge to the legality of the sentence. If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated. Likewise, a sentence that exceeds the statutory maximum is illegal. If a court imposes a sentence outside of the legal parameters prescribed by the applicable statute, the sentence is illegal and should be remanded for correction.

*Commonwealth v. Infante*, 63 A.3d 358, 363 (Pa.Super. 2013) (internal citations and quotation marks omitted).

The mandatory minimum sentencing statute at issue in this case during the relevant time provided:

> **§ 9714. Sentences for second and subsequent offenses.**
>
> **(a) Mandatory sentence.—**
>
> (1) Any person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. …
>
> \* \* \*
>
> **(d) Proof at sentencing.—**Provisions of this section shall not be an element of the crime and notice thereof to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. The sentencing court, prior to

imposing sentence on an offender under subsection (a), shall have a complete record of the previous convictions of the offender, copies of which shall be furnished to the offender. If the offender or the attorney for the Commonwealth contests the accuracy of the record, the court shall schedule a hearing and direct the offender and the attorney for the Commonwealth to submit evidence regarding the previous convictions of the offender. The court shall then determine, by a preponderance of the evidence, the previous convictions of the offender and, if this section is applicable, shall impose sentence in accordance with this section. …

42 Pa.C.S.A. § 9714(a)(1), (d) (effective August 4, 2020 to January 2, 2023).

Robbery is a crime of violence. **See** 18 Pa.C.S.A. § 3701(a)(1)(ii); 42 Pa.C.S.A. § 9714(g).

This Court has previously held that the "lesser standard of preponderance of the evidence does not shift the burden to the defendant to disprove his prior conviction" but "simply requires less evidence of the prior offense than typically required in criminal proceedings." **Commonwealth v. Freeman**, 514 A.2d 884, 888 (Pa.Super. 1986), *appeal denied*, 514 Pa. 642, 523 A.2d 1130 (1987). While the Commonwealth must give reasonable notice of its intent to seek the mandatory minimum sentence, the trial court, with the benefit of a PSI report, may appropriately determine that a defendant has a relevant prior conviction. **See Commonwealth v. Furness**, 153 A.3d 397 (Pa.Super. 2016), *appeal denied*, 642 Pa. 554, 170 A.3d 1034 (2017).

In **Alleyne, supra**, our Supreme Court held that any fact increasing the mandatory minimum sentence for a crime is considered an element of the crime to be submitted to the fact-finder and found beyond a reasonable doubt.

- 13 -

*See id.* Significantly, however, the *Alleyne* decision made clear that the fact of a prior conviction constituted an exception to the Court's holding. *See id.* at 111 n.1, 133 S.Ct. at 2160 n.1. Thus, this Court has held that Section 9714, which increases mandatory minimum sentences based on prior convictions, is not unconstitutional under *Alleyne*. *See Commonwealth v. Reid*, 117 A.3d 777, 785 (Pa.Super 2015); *see also Furness, supra* at 406.

Our Supreme Court has rejected due process challenges related to similar sentencing enhancements based on prior convictions:

> The fact of a prior conviction stands alone; it does not require a presumption—it either exists as a matter of public record or it does not. [A defendant's] guilt of the prior offense has already been determined beyond a reasonable doubt, by a jury, if he chose to exercise that right, and is a straightforward issue capable of objective proof and where the risk of error was slight.
>
> *        *        *
>
> [When] the judicial finding is the fact of a prior conviction, submission to a jury is unnecessary, since the prior conviction is an objective fact that initially was cloaked in all the constitutional safeguards, and is now a matter of public record.

*Commonwealth v. Aponte*, 579 Pa. 246, 263, 855 A.2d 800, 811-12 (2004) (discussing sentencing enhancements under the Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. §§ 780-101, *et seq.*) (internal citations and footnotes omitted). *See also Commonwealth v. Forbes*, 867 A.2d 1268 (Pa.Super. 2005) (explaining that procedure outlined in Section 9714 does not violate appellant's due process rights, as his prior convictions are matter of

record); **Commonwealth v. Clary**, 248 A.3d 491 (Pa.Super. filed Jan. 21, 2021) (unpublished memorandum),[3] *appeal denied*, ___ Pa. ___, 269 A.3d 1227 (2021) (citing **Aponte**, **Alleyne** and their progeny and concluding that Section 9714 does not violate appellant's due process rights).

Instantly, the trial court observed:

> A review of the sentencing transcript in this case reveals that…Attorney McMahon did not stipulate to any prior convictions in the absence of certified convictions. However, as in **Furness**, the transcript also reveals that the Commonwealth provided the necessary notice that it was seeking the mandatory sentence for the second "crime of violence" conviction, that the court ordered and received a pre-sentence investigation report and provided copies to counsel, and that defense counsel had no corrections, additions, or subtractions to the report. In the lengthy criminal history section of the report, it is noted that Appellant pled guilty on June 4, 2002, in the Eastern District of Pennsylvania Philadelphia Court and was convicted of armed bank robbery, conspiracy, using a firearm during a violent crime, and felon unlawfully in possession of a firearm. Attorney McMahon did not contest the accuracy of the presentence investigation and report.

(Trial Court Opinion at 33-35).[4]

Based on the above, Appellant is not entitled to relief on either sentencing claim. First, Appellant does not dispute his prior conviction despite his refusal to stipulate to it. **See Furness, supra** (citing 42 Pa.C.S.A. § 9714(d) and noting that accuracy of prior record, **if contested**, is subject to

---

[3] **See** Pa.R.A.P. 126(b) (stating we may rely on unpublished decisions of this Court filed after May 1, 2019 for their persuasive value).

[4] (**See also** PSI Report, 7/11/22, at 1-10).

preponderance of evidence standard). Second, both the Pennsylvania Supreme Court and this Court have rejected attempts to apply **Alleyne** to recidivist-based mandatory minimum sentence statutes, as well as arguments that such sentences violate a defendant's due process rights. **See Aponte, supra**; **Reid, supra**; **Forbes, supra**; **Clary, supra**. Therefore, Appellant's illegal sentencing claims fail. **See Infante, supra**. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/19/2024